HARDEMAN, *et als.* v. SIMS, *et als.**

1. Courts of Chancery have jurisdiction where a bill is filed to recover a slave in specie, under peculiar circumstances; as where the slave is a family negro, and a strong attachment exists towards the slave, so that damages would not be an adequate compensation, but an allegation that the negro is a "family slave," and that the complainants felt that personal regard for her which is usually felt for property of this kind," is not sufficient to oust the common law Court of jurisdiction, and confer it on a Court of Chancery.

2. All the plaintiffs to an action, must be competent to sue, otherwise the action

---

* NOTE.—This opinion was delivered at the January term, 1840, and was accidentally omitted in the published opinions of that term.

cannot be maintained; when, therefore, the statute of limitations has begun to run against one of several parties intitled to a joint action, it operates as a bar to such action.

Error to the Chancery Court of Columbiana.

THIS was a bill in Chancery, filed by the plaintiffs in error, against the defendants in error.

The bill charges that the grand-father of the complainants, one Turner Christian, on the 14th September, 1822, by deed duly recorded in the clerk's office of Charles City county, Virginia, conveyed to them certain negro slaves, which were then in the possession of their father, and which he shortly after brought with him to this State. That they were then, and, with the exception of one of the complainants, still are, infants; that their father being a man of extravagant and intemperate habits, sold many of the negroes, and contracted debts on which judgments being obtained, one of the negroes was sold and purchased by the defendant Sims. The slave so purchased was a girl, now about fifteen years of age, is " a family negro, and resided with them in their father's family, and that they have all that personal regard for her that is felt and entertained for property of this kind by all families, and therefore, seek her recovery in specie." The bill also charges that the complainants apprehend that the negro will be carried beyond the limits of the State, and prays a *ne exeat*, which was granted.

Sims, in his answer, denies all knowledge of the facts charged in the bill, except that he purchased the negro at public sale: she was then about six years old, and that he gave a full price for her. He denies all knowledge of the claim of the plaintiffs to the negro, and relies on the statute of limitations.

A great deal of testimony was taken in the cause, which from the view the Court take of the case, is not necessary to be set out. The Chancellor dismissed the bill under the defence of the statute of limitations, from which decree this writ of error is prosecuted.

BAYLOR, for plaintiffs in error.
PECK, contra.

ORMOND, J.—The first question to be considered is, whether such a case is made by the bill, as will give the Court of

Hardeman, *et als. v.* Sims, *et als.*

Chancery jurisdiction.   The object of the bill is, to recover a slave alleged to be a *family negro.*

It is certainly true, that slaves, although by our law considered property, differ in many respects from other chattels; and many cases may be supposed in which it is not proper that they should be considered as mere chattels.   They are intellectual, moral beings, and attachments of the strongest kind, sometimes grow up between master and slave, having its origin not unfrequently in early infancy, and strengthened in after life by dutiful service and obedience, on the one hand, and care and protection on the other.   When such a state of things exists, it is the duty of a Court of Chancery, to lend its aid in recovering the slave in specie, if improperly withheld, as damages would frequently be no compensation.   So, also, the relation of husband, wife or child, might subsist between slaves, the property of the injured party, and the one sought to be recovered, where the reason for sustaining the jurisdiction of chancery would rest on the same foundation, and other cases might be supposed.

We do not, however, assent to the position, that the defendant in detinue may, after judgment, retain the property by paying the alternative value, assessed as damages, as it is certainly in the power of the Court to compel its production, if in the possession of the defendants.   As, however, the action of a Court of Law is not so prompt, decisive, or certain in such matters, as that of a Court of Chancery, humanity requires that the jurisdiction should be upheld, when a proper case is presented.   This is the doctrine of the Courts of Virginia, as stated in the cases of Wilson and Trent v. Butler, 3 Munford, 559, and Allen v. Freeland, 3 Randolph, 170.

But the allegations of this bill do not make out a case which which will warrant the interposition of a Court of Chancery.— The slave, to recover which the bill is filed, is described "as a *family negro*, the gift of the complainants grand-father, and had resided with them in their father's family; that they felt for her all that personal regard that is commonly felt and entertained for this kind of property."   The single fact relied on here is, that the girl is a *family negro*; for as she was sold at the age of six years, some eight or nine years before the filing of the bill, it is impossible to suppose that any strong attach-

ment had subsisted between the complainants and the subject of the suit; nor is any particular attachment alleged, further than is commonly felt towards family negroes. On the other hand, the defendant purchased her at six years of age, has been in possession of her ever since, and must be presumed, as he insists in his answer, to be more attached to her, than those who had only known her in early infancy, and have been separated from her for many years.

This question came before this Court in the case of Baker *v.* Rowan, 2 Stewart & Porter, 371, where the Court hold this language: "We freely confess that slave property is in general, distinguishable from other chattels in this respect; that family slaves, to which owners become attached, should be preserved in specie, by the interposition of chancery, rather than leave the party to seek reparation in damages by suit at law; even with the partial assurance of restoration afforded by the action of detinue. The same principle applies equally, when from other circumstances a peculiar value or interest attaches to slaves or other property, but it must be such as to distinguish the article from other chattels of the like nature.

"If the case under consideration, depended alone on this principle, I should consider the allegations of the bill insufficient to warrant the interposition of chancery. It describes the property in general terms, as *family slaves,* for which reason the complainant desired to retain them; but the circumstances which could create peculiar value or attachment, are not stated with sufficient precision; nor is even the existence of particular attachment alleged."

The language here employed, is peculiarly appropriate to this case, to which it bears a striking analogy. To allow the general allegations employed in this bill, "that the slaves are family negroes," to be sufficient to oust a Court of law of its jurisdiction, would be to transfer to equity the decision of all controversies relating to family slaves. Whilst, therefore, we would sustain the jurisdiction of the Court of Chancery, in cases of this character, in aid of the humane desires of an owner, who for peculiar and sufficient reasons, sought the recovery of a slave in specie, we cannot permit it to be carried so far as to prostrate the cheaper and more convenient remedy afforded by the Courts of common law.

Hardeman, *et als. v.* Sims, *et als.*

We are also of opinion, that the defence of the statute of limitations is available to the defendants. It was contended in argument, that the exception in the statute in favor of infants, would take this case out of the statute, notwithstanding one of the complainants was barred by the statute.

We understand it to be the settled rule, that when a joint right of action accrues to several, the right must exist in all at the time of the action brought. When the statute begins to run as to one of several parties to a joint action, it runs as to all. This was explicitly held by the Court of King's Bench, in the case of Perry and others v. Jackson and others, 4th Term Rep. 516, where it was held that the exception in favor of persons beyond sea, could not be claimed by one partner abroad, the other being in England, and affected by the statute. And in Marsteller and others v. McClean, 7 Cranch, 156, a replication to a plea of the statute of limitations, alleging that some of the plaintiffs were infants, and within the exception of the statute, was bad on demurrer.

The precise point here raised, was also determined by the Court of Appeals of Kentucky, in the cases of Milner v. Davis, 1 Littell's Select Cases, 436; and Allen v. Beal's heirs, 3 Marshall, 554. That these decisions contain a sound exposition of the law on this subject, we entertain no doubt, and it would not be difficult to show that a contrary doctrine would not only involve great absurdities, but would also go far to deprive the statute of limitations of its beneficial effects.

The statute destroying the right of survivorship in cases of joint tenancy, has no influence on this case. The question here is not as to the sufficiency of the title of the complainants to the slaves supposed to be given to them by their grand-father, but it is whether they have a right to *maintain an action* for their recovery. The decision of this question does not depend on the fact of title, but conceding the title to be as alleged, the question is, whether the bar created by the statute, does not forbid the assertion of such right.

We have not considered it necessary to examine the other questions argued at the bar, as either of the two points discussed, is decisive of the case.

The decree of the Chancellor dismissing the bill, is therefore affirmed.