## ROYALL'S ADM'R vs. McKENZIE ET AL.

1.  When a bill in equity is filed to compel a settlement and account of an assignment, consisting principally of notes and accounts under twenty dollars against debtors who were residents of the district in which the trustee lived, the trustee, in the absence of all special cause, should be allowed twelve months from his acceptance of the trust for the collection of the debts, and should be charged with interest on the available assets from the expiration of that time.
2.  The trustee's own note, when included in the assignment, should be charged as cash in his hands from the time it falls due.
3.  Where the assignor, after the lapse of a sufficient time for closing the assignment, agrees with the trustee that, on the latter confessing judgments in favor of certain preferred creditors, the balance shall stand open for future adjustment, the trustee should nevertheless be charged with interest on that balance from that time.
4.  It is the duty of the trustee to use all necessary means, by action or otherwise, to realize the debts ; if a debt is lost by his neglect of this duty, where the debtor had property sufficient to pay, he is personally responsible for the loss, although he may have acted without any improper motive.

5. When the trustee alleges in his answer that the assignor, with full knowledge of all the facts, assented to his settlement of a debt by taking lands in satisfaction of it, this is matter in avoidance, which requires evidence *aliunde* to sustain it.

6. If the trustee, without the sanction of the *cestuis que trust*, receives lands in settlement and satisfaction of the trust debts, equity will hold him responsible for whatever loss may ensue, and, if the *cestuis que trust* so elect, treat the lands as his own individual property.

7. The trustee is not estopped from showing that the actual amount of any debt is less than that specified in the assignment, and he would only be accountable for the actual amount of it.

8. If the deed confers no authority on the trustee to compromise the debts, he cannot compromise them without the consent of the beneficiaries.

9. The trustee is chargeable with the amount of a debt, although the evidence is conflicting as to the debtor's solvency, upon proof that he had had a settlement with the debtor, and had paid him in cash the balance found in his favor.

10. He is also chargeable with rents accruing under a lease included in the assignment, upon his own admission of the lease and proof of the lessee's solvency.

11. Also, with the value of articles of personal property embraced in the assignment, to which he is shown to have asserted title, although he denies that they ever came to his possession.

12. When the order of reference directs the master to take an account of the expenses of executing the trust, and to ascertain what would be a reasonable compensation to the trustee, should the court decree compensation ; and the master reports, as a reasonable compensation, a certain per cent. on the amount of the available assets, which are also ascertained and reported under another part of the reference, the report conforms to the reference.

13. A trustee, who, after accepting the trust, voluntarily permits his co-trustee to take the entire management of it, and the possession and control of the trust property, is equally with him liable to account : and on bill being filed against both for an account and settlement of the trust, he is an incompetent witness for his co-defendant to prove the insolvency of the debtors.

14. An answer in chancery is admissible evidence against the respondent, in a subsequent suit, whether the parties are the same or not.

15. A witness may state that "he regards certain debtors as insolvent," if his testimony shows that his conclusion is based upon his knowledge of their circumstances ; but not otherwise.

16. An exception to a particular portion of a master's report, embracing a large number of separate and distinct items, should be overruled for its generality ; it is the office of an exception to point out the particular item objected to.

17. If the trustee buys up the secured debts at less than their nominal value, he is only entitled, on a settlement of the trust in equity, to a credit for the amount actually paid by him.

APPEAL from the Chancery Court of Macon.

Heard before the Hon. WYLIE W. MASON.

THIS bill was filed, in 1847, by John Foster, as administrator of William Royall, deceased, against John McKenzie and Amasa Howard, to compel a settlement and account of an assignment executed to the defendants by said Royall, in October, 1832, in Lancaster District, South Carolina, where the parties then resided. In 1841 said Royall had filed a bill in the Chancery Court at Talladega, in the name of himself and the creditors secured by the deed, against the said trustees, to compel a settlement of the assignment; but after a reference to the master of the matters of account had been ordered, the suit was compromised on the 30th of July, 1844, by McKenzie allowing a decree to go against him in favor of the preferred creditors, and it was then agreed that the other matters of account should stand open for future settlement.

A reference to the master of the matters of account was awarded, and each party filed exceptions to his report. There are now cross assignments of error in this court, embracing the action of the chancellor upon each one of these exceptions; and as the material facts bearing upon each point are stated at sufficient length in the opinion of the court, a further statement of them in this place is unnecessary.

JOHN A. ELMORE, N. W. COCKE, and WM. C. MCIVER, for complainant:

1. As to the solvency of the debtors whose debts were charged to McKenzie, the complainant's evidence is affirmative, and shows them to have had property; while the defendants' evidence is negative, and not as to facts, but opinion only, and not showing that the debtors had no property.

2. There is no reason in law, nor in the facts of the case, for postponing interest on the available assets for two years. Many of the claims are notes due at the time; and the balance were notes and accounts due January, 1853. H. R. Price, who was clerk in 1831 and part of 1832, could have proved those accounts entered by him, but was never called on to do so by McKenzie. Some of the claims were collected before October, 1834; and all collected bore interest, and McKenzie charged interest, or should have done so. One year is the most that should have been allowed, by analogy to legacies.

3. The account should have been made out up to July 30,

1844, the day of the partial settlement in Talladega; the balance should then have been struck, and interest should have been allowed on that balance until the time of taking the account.—2 Johns. Ch. 209 ; 2 Hill's Ch. 145 ; Lewis v. Bradford, 8 Ala. 632, Bryant v. Craig, 12 *ib.* 562; 7 *ib.* 230 ; 1 Johns. Ch. 620; 3 G. & Johns. 311; Robbins v. Haywood, 1 Pick. 528, note ; 8 U. S. Dig. § 114, p. 619.

4. A trustee cannot discharge himself from liability ; this can only be done by some provision in the deed, by decree of the Court of Chancery, by full execution of the trust, or by the consent of all the parties interested.—Barnwell v. Barnwell, 2 Hill's Ch. 232 ; 11 Paige 314 ; 8 U. S. Dig. § 101, p. 360.

5. An executor cannot take land in payment of debts due to the testator ; if he does, his purchases are his own, and he is chargeable with the sum allowed for the lands.—Weir v. Tate, 4 Ired. Eq. R. 264.

6. As to the gin : Thompson proves that McKenzie sent it to his father's to be repaired, and that it was taken away by Bilk after his father's death ; and Bilk is proved to have been solvent.

7. The solvency of Caxton, who had a lease of the land for two years, is shown by several witnesses ; and it is also proved that Royall had issue by his wife.

8, 9 and 10. The Billings' debt is established by his own testimony ; the Montgomery debt by the evidence of Chilton; and the Price debt by that of several witnesses.

11. As to compensation : McKenzie claimed, in his answer to the bill filed in Talladega, that the McIntyre & Co. debt was a charge on the fund ; that the debts of Weed, and Benedict, and Robbins, were a charge to the full amount. The first was paid him by Royall from another fund ; and the last was bought up by him at $62\frac{1}{2}$ cents in the dollar. He insisted then that he owed nothing ; while his own note for $3929, with interest, was a fund in his hands ; and he had paid only about $500 or $600 for the debts of Weed, Benedict and Robbins ; these were all he settled, while he has had the fund since 1832. He proved no expense or trouble, and under the circumstances, the allowance made him was liberal.

12. The calculations on McKenzie's note, as made by the

master, were correct.—Childress v. Childress, 3 Ala. 750 ; Duffee v. Buchanan, 8 *ib*. 27 ; Purdom v. Tipton, 9 *ib*. 914 ; 2 Hill 408 ; 3 Rich. 125.

J. E. BELSER and SEABORN WILLIAMS, *contra :*

1. McKenzie should be allowed his commissions.—Gould v. Hays, 19 Ala. 438; Powell v. Powell, 10 *ib*. 900; Elliott v. Elliott, 6 G. & John. 35.

2. He should only be charged with his own note as money, and interest should not be compounded against him.—Childress v. Childress, 3 Ala. 754 ; Duffee v. Buchanan, 8 *ib*. 31; Purdom v. Tipton, 9 *ib*. 914 ; Peyton v. Smith, 2 Dev. & Bat. Eq. 339 ; Myers v. Myers, 1 Bailey's Eq. 23.

3. The charging of McKenzie with interest on the other available funds raised from the assignment after the end of two years, was but reasonable. No arbitrary rule can be laid down in such cases.—Graham v. Davidson, 2 Dev. & Bat. Eq. 156 ; Rice's Eq. 433.

4. McKenzie should not have been charged with the Price debt, nor on account of the Montgomery debt, as he acted in good faith.—Douthit v. Douthit, 1 Ala. 597 ; Duffee v. Buchanan, 8 *ib*. 31 ; Willis v. Willis, 16 *ib*. 652 ; Harrison v. Mock, 10 *ib*. 185.

5. Howard is a competent witness for McKenzie, not being interested so far as his co-trustee is concerned.

6. It should be observed that this is not a creditor's bill, but a bill filed by the assignor's administrator ; that the assignor lived long after the assignment was made, and acquiesced in the delay as to the winding up of the assignment ; that the assignor was silent until the filing of the bill in 1841.

7. The answer of McKenzie is evidence ; the bill is a searching one in every particular, and the answer is responsive.—Powell v. Powell, 7 Ala. 582.

8. The trade for the Price land is void ; Price, who owed the debt, and traded for the land, is insolvent. The land either belongs to the estate, or the debt is lost.

GOLDTHWAITE, J.—The first question presented by the assignment of errors is, as to the allowance of interest made by the master upon the available debts specified in the

assignment. No principle is better settled, than that it is the duty of a trustee of a *chose in action*, to take every necessary step, compatible with reasonable diligence, to meet the object of the trust (Caffrey v. Darby, 6 Ves. 488; Mucklow v. Fuller, Jac. 198; Powell v. Evans, 5 Ves. 839; Tebbs v. Carpenter, 1 Mad. 290; Lewis v. Copeland, 6 Beav. 486); and it is not sufficient for the trustee merely to apply for payment, but it is his duty to bring an action, if necessary, for the recovery of the amount.—Lawson v. Copeland, 2 Bro. C. C. 156. With the exception of the notes on McKenzie, Price, Hugh Montgomery, Thomas J. Wright, and some few others, the claims assigned were under fifty dollars, and, indeed, by far the greater portion of them under twenty dollars; and as the answer of McKenzie admits, that the debtors generally were residents of the district in which he resided, we think that by the exercise of ordinary diligence on his part, most of the available debts could have been realized within a year after the acceptance of the trust. There would, undoubtedly, be cases in which this result could not be accomplished; but in the absence of any special cause, we see no good reason for allowing a longer period to collect from debtors who were solvent, and whose debts were due at the execution of the assignment, or on the first of January thereafter, as the accounts generally were.

The assignment requires the trustees to apply the proceeds of the claims, &c., assigned, to the payment of the debts of Royall, in equal proportions; but the record shows, that every creditor of Royall, whose debts, so far as we can learn, were a charge upon the trust fund, accepted the provisions of the assignment shortly after its execution; so that there was no necessity for McKenzie to retain the moneys in his hands, in order to ascertain these debts, after the expiration of the year. These debts were bearing interest; and it was not only the duty of the trustee, to proceed to collect, with all convenient diligence, the claims assigned, but to apply the funds collected to the payment of the creditors, in order to stop interest. There can be no definite rule to govern courts as to the charge of interest against trustees, but we think under all the circumstances of this case, equity requires that interest should be charged on the available assets from

the time we have stated—twelve months after the acceptance of the trust, with the exception of the notes on McKenzie. Under our own adjudications, where notes are due by trustees, the amount should be charged as cash in their hands from the time they are due (Childress v. Childress, 3 Ala. 750; Duffee v. Buchanan, 8 Ala, 27). As the demands to which the trust funds were to be applied were ascertained when the first note fell due, it was the duty of the trustee to apply such funds to the purpose of the trust; and failing to do so, he is properly chargeable with interest.

We think, also, the account should have been made up to the 30th of July, 1844, the balance then struck, and that the complainant would be entitled to interest on such balance, if any was found in his favor. It was, as we have seen, the duty of the trustees, to have collected and applied the available assets to the payment of the trust debts within a reasonable time, and after the discharge of these debts, to have paid the surplus, if any, to Royall. This, however, was not done. More than twelve years had elapsed since the defendants had taken upon themselves the execution of the trust; and on the application of the *cestui que trust*, so far as the surplus was concerned, in July, 1844, an account was taken. It is true that Royall agreed, on McKenzie's confessing judgment in favor of certain of the creditors, that the balance should stand over for future adjustment; but this agreement does not affect the principle upon which the *cestuis que trust* were entitled to interest. The time which had elapsed was sufficient, and more than sufficient, to have closed the assignment so far as the creditors were concerned; and after satisfying their demands, and allowing a reasonable time to ascertain the state of accounts, the party entitled to the surplus, upon making application, was entitled to interest from the time of taking that account.

As to the Price debt: There is a good deal of conflict in the testimony as to the solvency of the debtor; but we think the evidence establishes the fact, that he had, at the time of the acceptance of the trust by McKenzie, property fully sufficient to pay the debt. It is clearly proved, that this property was transferred to his father, Josiah Price; and one witness, the brother of the debtor, swears that the father was

to pay this debt. It is difficult to resist the conclusion, that such was actually the case, as we find the father afterwards offering to pay the debt, in the land which McKenzie subsequently received. If the transfer was not made upon this consideration, it is evident that the sale was fraudulent and void, and that the property of Price, which was amply sufficient to discharge this debt, could have been subjected to its payment. The law requires, as we have already seen, that in such case the trustees should take every necessary step, by action or otherwise, to realize the debt; and if the fund be lost from their neglect of this duty, they will be held personally responsible to the *cestuis que trust* for the loss, although they may have acted without any improper motive.—Caffrey v. Darby, *supra*. The answer of McKenzie alleges, that Royall, who was absent at the time the land was taken in discharge of the debt, on his return, was advised of the arrangement, and was perfectly satisfied with it; and had this allegation been sustained by the evidence, there would be no question that the complainant, as the representative of Royall, could not charge McKenzie with the debt. But these facts are not established, and the answer is not proof; such circumstances being matter in avoidance, which requires evidence *aliunde* to sustain it.—Randall v. Phillips, 3 Mason 378; Cannon v. Norton, 14 Verm. 85; Clarke v. White, 12 Pet. 178. It is also shown, that McKenzie not only settled this claim by taking land, but that he took the title to himself individually. It is true that this also is attempted to be explained by the answer, which states that the title was thus taken in order to convey to purchasers the more easily; but there is no evidence on this point, and we do not see how a title could be made more easily by the grantor as an individual, than by the same person in his fiduciary capacity. Whenever a trustee treats the trust property as his own, he is held responsible for the consequences.—Wren v. Kinton, 11 Ves. 377; Massey v. Banner, 4 Madd. 413; McDonnell v. Harding, 7 Sim. 178. This rule is a most salutary one, and the interest of the *cestuis que trust* demands that it should not be relaxed. It would be unsafe to hold that a trustee could, without the sanction of all the parties interested, settle the trust debts, by receiving land,—take the conveyance to himself individually,

and, if the property should turn out to be valueless, let the loss fall upon the *cestuis que trust*. The trustee should understand, that if he will deal with the trust property as if it were his own, a Court of Chancery will so regard it, if the *cestui que trust* elects to do so.

We do not think, however, that McKenzie should be charged with more than the amount of this debt, as it was proved by Isaac D. Price, at the time of its settlement, $1,239 15, and interest upon the same from a year after the acceptance of the trust. We do not understand the answer of McKenzie to admit the amount of the debts assigned as specified in the deed of trust, so as to estop him from showing the real amount of the debt, which was all that in equity he could be required to collect or account for.

As to the claim on Hugh Montgomery for one hundred and ninety-eight dollars : We think that McKenzie should be charged with the whole amount of this debt, with interest from the same period as the other debts, except the notes of McKenzie. The evidence of the witness Chilton is conclusive to show that this debt was collected ; the deed confers no authority upon the trustees to compromise the debts specified in the assignment ; and having done so without the consent of the *cestuis que trust*, the trustees must be charged with it. The evidence shows, that three hundred dollars on this claim was collected ; but it is not very clear as to the time when the collection was made. There is no evidence that McKenzie acted otherwise than in good faith ; and as the debtor had left the State in which the debt was contracted, we do not think he should be charged with more than the amount of the debt, and interest from the time we have stated; and he would be entitled to a credit of five per cent. commissions on the amount, which it would have cost him to make the collection.

As to the Billings debt : The evidence shows that he was a good blacksmith, and although several witnesses swear as to his solvency, a greater number depose as to his insolvency. His own testimony has been taken, which is entitled to full credit, as the defendant's witnesses speak of him as an honest man ; and he proves that he was in the employment of McKenzie, the year that the latter left South Carolina,—that

they had a settlement, and that McKenzie fell in his debt about twenty dollars, which he paid 'him in cash ; that the account of the settlement was made out by McKenzie, and has been lost or destroyed ; that he cannot say positively whether the debt assigned was included in the settlement or not. Taking into consideration the facts thus proved,—bearing in mind, also, that McKenzie is proved to have been a good collector, and that it was his duty to collect this demand,—it would be against every reasonable presumption to suppose that upon this settlement, the items of which were made out by McKenzie himself, this debt was not included, and that if it had not been, McKenzie would not have retained the amount which he paid to the debtor on that settlement, as a payment *pro tanto*.

So, also, in relation to the claim on Wilkes Caxton for the lease of the plantation. We understand the answer of McKenzie to admit the lease ; but he insists that the amount of the same was not realized by him, for the reason that the lands belonged to the wife of Royall ; that she was dead when the lease was made ; that her children by a former marriage were the owners on her death ; that they took possession of the land, and the lessee, Caxton, refused to pay the rent. The allegations of the answer are not very precise as to the tenancy of the wife, but we can give them no other construction, than that the wife was the absolute owner, or tenant in fee ; and as the witness Crockett proves that Royall had issue by this wife, that would make him tenant by courtesy, and give him a life estate. But independently of this view, the facts set up by McKenzie could not avail him, if they would have amounted in law to a full defence against the payment of the rent by the lessee, for the reason that the solvency of Caxton is fully proved, and the lease being admitted, the other facts to which we have referred are new matters, and it devolves upon the defendant to prove them by other testimony than the answer. The chancellor erred, therefore, in sustaining the exception to this claim.

As to the gin : The answer of McKenzie denies that he ever received it ; but the schedule attached to his answer shows that it was among the articles assigned, and it is evident that McKenzie knew where it was, as we find him sub-

sequently asserting title to it, and offering to sell it to the witness Coulgan for seventy-five dollars. The witness Thompson proves, that it was left with his father to be repaired ; that it was worth fifty dollars, and that it was taken away by Darling Bilk, whose solvency was fully established by the testimony. If Bilk took the gin without the authority of McKenzie, it was the duty of the latter to have held him or Thompson responsible, and failing to do so, he is responsible himself. There was no error to which the defendants could object in the charge made by the master for this item.

The claim of Shelton we regard as a proper charge on the trust fund. This debt was included as one to be paid out of the proceeds of the assignment ; and the slight discrepancy in the amount of the debt as furnished by Royall, and as stated by the creditor, makes no difference. The only question is, whether this was a trust debt, and upon that we can have no doubt. The debt is due by McKenzie, and he is responsible for it to the creditor.

In sustaining the 8th exception of the defendants to the report of the master, we think the chancellor erred. The order of reference directed an account to be taken of the expenses of executing the trust, and also that the master should ascertain what would be a reasonable compensation to the trustees, should the chancellor deem compensation proper.— The report is, that five per cent. upon the amount reported by the master as available from the assets, except the notes on McKenzie, would be a fair compensation ; and this portion of the report is excepted to, on the ground that it was not authorized by the decree of reference. We are unable to perceive any force in this objection. The available assets were ascertained, and the compensation reported was a certain commission upon the amount of a specific portion of these assets. We see nothing to have authorized the allowance of the exception.

The only remaining question arising out of the assignment of errors on the part of the complainant, is as to the action of the chancellor in overruling the exceptions taken to the testimony of the witness Howard. The rule is, that a defendant trustee may be a witness for his co-trustee, unless he has some personal interest in the event of the suit ; but

where there is some charge which he is interested in rebutting, or any liability, however trivial, which depends on the nature of the decree in the suit, his evidence will not be received.—Frank v. Mainwaring, 2 Beav. 126. Here the witness was the co-trustee; the bill seeks an account of him as such, and the only answer he gives is, in substance, that he accepted the trust upon an understanding with Royall that he was not to discharge any of its duties. This allegation is not sustained by the proof; and the rule is, that if one trustee, after accepting the trust, voluntarily permits his co-trustee to take the management of the trust, and the possession and control of the trust property, both are answerable.—Morell v. Morell, 5 John. Ch. 283. This is precisely the case here, and he for that reason was incompetent to prove the insolvency of the debtors in the deed; for no decree could be rendered against him for debts in that condition.

As to the cross errors assigned by McKenzie: The exception to the answer of McKenzie to the bill filed in Talladega, was properly overruled, as his admissions contained therein, in relation to any items or portions of the assignment which is the foundation of the present suit, were evidence against him. It makes no difference whether the parties are the same or not: it is received as a confession.—3 C. & H. notes to Phil. Ev. 926, and cases there cited.

The exception taken to the evidence of the witness Humphreys was not sustainable. This witness, it is true, states that "he regards certain debtors," named in the assignment, "as insolvent"; but it is evident, from the other portions of his testimony, that his conclusion is based upon his knowledge of their circumstances. Not so, however, in relation to the witness Buskins, to whose evidence the same objection was made. His testimony, in relation to this fact, is mere opinion, and the exception taken to his evidence should have been sustained.

The second exception taken by the defendants to the report of the master, was also properly overruled, by reason of its generality. That portion of the report of the master to which this exception was directed, involved an examination into the availability of upwards of a hundred and sixty different and specific claims, and the examination of a most vo-

luminous mass of evidence in relation to the solvency of the different debtors. This part of the report specified each claim which was found to be available ; and instead of directing the exception to those debts as to which the decision of the master was supposed to be incorrect, it is levelled at the whole in mass,—thus throwing upon the chancellor the entire duty which he rightly devolved upon the master. If the order of reference had simply directed the ascertainment of the available debts, and upon the report coming in, an exception had been made in general terms to the report, specifying no particular debt, alleging no specific ground, it would be objectionable. It is the office of the exception, where the report embraces separate and distinct items or matters, to point to the particular one objected to ; and as this was not done, the action of the chancellor in overruling it, was free from error.

The only remaining question, is the one presented by the cross assignment of errors involving the correctness of that portion of the report of the master which was in relation to the notes due Weed & Benedict, and E. C. Robbins, which were to be paid out of the proceeds of the assignment. The trust deed was made in the fall of 1832 ; and in December, 1835, more than three years afterwards, and when McKenzie must be presumed to know the amount that would be realized, he buys these notes at about fifty cents on the dollar, and in payment gives his own individual note, due one year after date, for the amount he agreed to pay them ; and it is under these circumstances that he claims a credit for the whole amount of the debts he thus purchased. Equity scrutinizes with a jealous eye every species of dealing by a trustee made in his individual character, having any connection with the trusts which he has undertaken to execute, and it does not allow him to deal with them for his own personal profit.— This is a most salutary rule, and the slightest relaxation of it would tend to bring the strongest passion of our nature— self-interest—in conflict with the faithful discharge of confidential duties. The report of the master, crediting the trustee with only the actual amount he had paid, was correct. *In re* Oakley, 2 Eden, 478.

The decree of the chancellor must be reversed, and the

cause remanded, to be proceeded with in conformity with the views we have expressed, the defendants in error paying the costs of this court.

CHILTON, C. J., did not sit in the case, having been of counsel.