# Adams *v.* Sayre.

*Bill in Equity by Mortgagor, for Account and Redemption.*

1. *Finality of decree.*—As a general rule, there can be but one final decree on the merits of a cause, and it can not be altered at a subsequent term; but a decree may be partly final, and partly interlocutory—as where it settles the substantial merits of the case, and orders an account to be stated between the parties; in which case, an appeal would lie from it, and also from the subsequent decree based on the register's report and statement of the account.

2. *Same, in this case.*—In this case, the bill was filed by a mortgagor, seeking to redeem his lands from a purchaser at the mortgage sale, on the ground that he bought by collusion with the mortgagee, or, in the alternative, that he was plaintiff's agent in charge of the property, with power to sell, and therefore could not purchase for himself. The chancellor held the complainant entitled to relief, but did not state under which aspect of the bill, and ordered the register to state an account;

and on appeal to this court, his decree was affirmed, on the ground that the complainant was entitled to relief under the second aspect of his bill. *Held*, that the chancellor, after this affirmance, might modify and change his instructions to the register as to the principles on which the account should be stated.

3. *Purchase by agent, at sale of principal's property.*—When an agent, having control of his principal's property, with power to rent and sell, becomes the purchaser at a sale under a mortgage, his purchase is not void, but, like a purchase by a mortgagee at his own sale, is voidable merely, at the option of his principal, seasonably expressed; and when the principal seeks to set aside the sale, he will be required to do equity.

4. *Same; statement of account on disaffirmance of sale.*—The principal, seeking to set aside the agent's purchase at the mortgage sale, will be required, at least, to refund the purchase-money paid, with interest, moneys expended in repairs and permanent improvements, taxes, and other lawful charges, with interest thereon; while the agent will be required to account for rents and profits, or, if in possession, for use and occupation, as of the value, of the property when he took possession, not estimating the increased value by reason of his improvements.

5. *Same ; interest on rents.*—In stating the account in such case against the agent (or purchaser), when he is chargeable with rents, the chancellor has a large discretion in the allowance of rests in calculating interest, dependent upon the amounts collected and the times when collected, the statutory rule as the application of partial payments not being just or applicable in all cases. In this case, on the facts shown by the record, rests should be made every six months.

6. *Same; allowance for commissions, attorney's fees, etc.*—The agent having become the purchaser at a mortgage sale, and claiming to hold possession in his own right, he is not entitled, as against his principal seeking to set aside the sale and to redeem, to compensation for his management of the property during such possession, nor for attorney's fees and costs incurred in ejecting a defaulting tenant.

7. *Same; allowance on account of mortgage debt assigned.*—The equity of redemption being cut off by the sale under the mortgage, and the mortgage debt extinguished to the amount bid at the sale, if the agent afterwards takes an assignment of the mortgage and secured debt, by a separate transaction, he holds this demand, as against his principal, subject to abatement on account of usurious interest paid, or other equities existing between the mortgagor and mortgagee at the time of the transfer.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 11th April, 1879, by William D. Sayre, against James R. Adams and Thomas Joseph; and sought to redeem a certain store-house and lot in the city of Montgomery, which had been sold under a mortgage by said Thomas Joseph, as the assignee of W. F. Joseph, and bought at the sale by said Adams, to whom Joseph executed a conveyance as the purchaser, and also assigned to him the mortgage and secured note. The mortgage was dated January 11th, 1873, and was given to secure the payment of a promissory note for $3,100, money borrowed by said Sayre from W. F. Joseph; and it contained an express provision, authorizing the mortgagee to purchase at any sale made under the power therein contained. On the 25th April, 1877, after the transfer

of the mortgage to Thomas Joseph, and when he was about to foreclose it by a sale under the power, a written agreement was entered into between him and said Sayre, which, after reciting the facts as to the execution and assignment of the mortgage and the intended sale, proceeded thus: "Now, therefore, in consideration of one dollar to me in hand paid by the said W. D. Sayre, the receipt whereof I do hereby acknowledge, I have agreed, and do hereby agree with the said W. D. Sayre, that, in case I am the purchaser of said property at said sale, the said W. D. Sayre shall have the right to redeem said property, at any time within two years from the date of said sale and purchase by me, on the following terms, to-wit: that is to say, I am to credit the said promissory note and mortgage with the net proceeds of the rents of said property, and the said Sayre is to pay any balance that may be due on said promissory note at the time of said redemption, including interest on the same; and from said rents are to be deducted, also, the expenses contemplated by said mortgage, incident to the foreclosure of the same. In witness whereof," &c. The bill alleged that Adams, who was a real-estate agent in the city of Montgomery, had charge and control of the property as complainant's agent, collecting the rents; that he had made payments for complainant on the mortgage debt to Joseph, and knew that usurious interest was included in it; that he had knowledge of the written agreement between complainant and said Joseph, and became the purchaser at the sale, with the assent of complainant, on the understanding that he would hold the property pursuant to that agreement; and that after the sale, when complainant demanded an account with the view of redeeming the property, "said Adams denied that he had purchased the property pursuant to any agreement with either complainant or said Joseph, and claimed that he had purchased the same without any condition or limitation upon his right as such purchaser, and denied that complainant had any right of redemption except under the statute," &c. The bill was afterwards amended, by alleging that it was the duty of Joseph, in executing the power of sale, either to purchase the property himself, or to make it bring the best possible price, yet, in violation of this duty, he agreed with Adams, just prior to the sale, not to bid against him if Adams would bid $3,120; that the property was bought by Adams pursuant to this agreement with Joseph, "which was a breach of trust and duty on the part of said Joseph, participated in by said Adams," and that this agreement was unknown to complainant until after his original bill was filed.

The chancellor overruled a demurrer to the bill, and rendered a decree as follows: "The court is of opinion that the complainant is entitled to relief, and so orders and decrees.

[Adams v. Sayre.]

The matter is referred to the register, to state an account. He will charge complainant with interest at eight per-cent. on his note, from the date of its maturity, and with all taxes paid by Adams on account of the mortgaged premises, and with the cost of permanent improvements and necessary repairs put on the property by him. He will credit complainant with all payments made to Thomas Joseph, according to the legal rule for applying partial payments, and also with the rents received by Adams since he went into possession. He will report to the next term the balance due on the mortgage debt." This decree was affirmed by this court, on appeal by Adams.—*Adams v. Sayre*, 70 Ala. 318–26.

Afterwards, when the register proceeded to state the account between the parties, the complainant applied to the chancellor for an amendment or modification of the instructions given in the decree above copied; and the chancellor thereupon ordered and decreed that the instructions "be, and they are hereby, amended by substitution," as follows: 1. By striking out the words "*He will charge complainant with interest at eight percent. on his note, from the date of its maturity*," and inserting, in lieu thereof, "He will charge complainant with the amount of the debt legally due from him, with interest thereon at eight per-cent." 2. By striking out the words "*He will credit complainant with all payments made to Thomas Joseph, according to the legal rule for computing partial payments*," and inserting in lieu thereof, "*Also*, with all payments made to W. F. Joseph, on said loan, before the transfer of the debt to Thomas Joseph, according to said legal rule." 3. "And it is further ordered, that the register, in holding said reference, shall charge against complainant all legal and equitable sums, with interest thereon, and shall credit him with all sums which legally and equitably should be given him as credits, according to the testimony adduced before him."

On the statement of the account by the register, under these instructions, Adams claimed an allowance of ten per-cent. on the rents collected by him while in possession of the property, as the usual commissions charged by real-estate agents for renting property, collecting rents, &c. ; and he excepted to the disallowance of this claim by the register. He also asked a credit for $14.10, costs and attorney's fee paid in ejecting a defaulting tenant from a part of the premises; and he duly excepted to the disallowance of this credit by the register. The chancellor overruled these exceptions, and confirmed the register's report; and it appearing from the report that, after allowing Adams all the credits to which he was entitled under the instructions of the chancellor, including permanent improvements, taxes paid, &c., and charging him with rents received, and interest

[Adams v. Sayre.]

thereon, there was a balance of $256 due from him to the complainant, the chancellor rendered a final decree, declaring the mortgage satisfied, directing the register to enter satisfaction on the records, and requiring Adams to surrender the possession of the property; and he further rendered a money decree against Adams, for the balance of $256, in favor of the complainant, and ordered the costs to be equally divided.

From this decree Adams now appeals, and here assigns as error: 1. That the chancellor had no authority to modify the instructions contained in the former decree. 2. That the amended or modified instructions were erroneous. 3. That the chancellor erred in overruling the defendant's exceptions to the register's report. 4. That the chancellor erred in charging interest against him on rents collected, from the date of the same. 5. That he erred in charging defendant, on statement of the account, with payments made to Wm. F. or Thomas Joseph, prior to the sale under the mortgage.

GUNTER & BLAKEY, for appellant.—1. The chancellor had no power to alter the instructions to the register contained in the first decree. By that decree, the chancellor held the complainant entitled to relief, and declared the extent of that relief, and the principles by which it was to be ascertained, by the instructions to the register as to the statement of the account; and this court, affirming his decree, said: "We can not see that the chancellor erred in decreeing relief to the complainant, or in announcing the principles on which the account between the parties should be stated." The chancellor had no power to amend or alter this decree, or to modify the principles on which relief was granted, at any subsequent term. *Garner v. Prewitt*, 32 Ala. 13; *Clark v. Hall*, 7 Paige, 384; *Gibson v. Crehore*, 5 Pick. 160; *Rogers v. Rogers*, 1 Paige, 188; 2 Dan. Ch. Pr. 1028; *King v. Savery*, 8 De G., M. & G. 317. (2.) This court decided, on the former appeal, that the complainant was not entitled to relief on the ground of the alleged agreement, because it was not shown that Adams had knowledge or notice thereof; but that he was entitled to relief, because Adams occupied such a fiduciary relation to him as forbade a purchase by him without the consent of his principal; that the purchase was voidable, at the election of the principal, and the agent chargeable as a trustee *in invitum*. This being the relation between the parties, and the principal electing to disaffirm the sale, he is required to repay the money advanced, with interest, taxes paid, cost of permanent improvements, and all other lawful charges, while the agent is charged with rents, or with use and occupation of the property.—*Fox v. Mackreth*, 1 L. C. Eq. 115, 172; *Thorp v. Cullum*, 1 Gilm.

33

815; *Wilson v. Troup*, 2 Cowen, 238; *Ives v. Ashley*, 97 Mass. 198; *Saltmarsh v. Beene*, 4 Porter, 283; *Russell v. Southard*, 12 How. 156. (3.) Adams was a real-estate agent, whose business was to rent out houses and collect rents; and it was proved that such services were worth ten per-cent. of the amount collected. He managed the property as his own, and it was his until Sayre elected to claim it; but this election did not convert him into a trespasser, nor take away his right to an allowance for moneys expended in improvements; and no distinction, in principle, can be drawn between money expended and personal services.—*Gibson v. Crehore*, 5 Pick. 160; *Tucker v. Buffum*, 16 Pick. 51. The claim for costs and expenses in ejecting a defaulting tenant certainly also comes within the principle of necessary and reasonable disbursements, and it should have been allowed. (4.) The chancellor erred, also, in charging appellant with interest on rents collected, from the day of collection, instead of the end of the year, or, at least, after the expiration of six months.—*Royall v. McKenzie*, 25 Ala. 368; *Harrison v. Harrison*, 39 Ala. 511; 1 Perry on Trusts, § 3245. (5.) The rights of Adams, on disaffirmance of the sale by Sayre, have no connection with the conduct of Joseph in executing the power of sale. But it is insisted that Joseph, in procuring a purchaser to bid a reasonable price for the property, was guilty of no breach of trust.—*Kearney v. Taylor*, 15 How. 519. Nor are the appellant's rights, as purchaser at the sale, affected by the subsequent transfer to him of the mortgage and note.—*Duval v. McLoskey*, 1 Ala. 728; *Ross v. Barclay*, 18 Penn. 179; *Perkins v. Lewis*, 41 Ala. 658.

TROY & TOMPKINS, *contra*.—(1.) The original bill sought to charge Adams, as purchaser at the sale by Joseph, into a trustee for the benefit of the complainant, because he bought with notice of the agreement for redemption between Joseph and complainant; but this case was denied and disproved by Adams and Joseph, who showed, on the other hand, that Adams bought under a private agreement with Joseph that the latter would not bid against him; and the bill was thereupon amended by charging these facts, and relying upon them as a palpable breach of duty on the part of Joseph, in which Adams participated, and thereby became chargeable with the equities existing between Joseph and complainant. That the conduct of Joseph was a breach of trust, see authorities cited in brief for appellee on former appeal, 70 Ala. 325; also, Story's Equity, § 293. That Adams, having participated in this breach of trust, is subject to every defense which Sayre had against Joseph, see Bump on Fraud & Mistake, 236. While the fact that Adams was Sayre's agent, at the time of

the transaction, strengthens the complainant's case, it does not affect his rights, or the character or extent of the relief to which he is entitled. This was the case made by the record on the former appeal, and it was sustained by this court on appeal. (2.) The instructions to the register, in the former decree, as to the mode of stating the account, contained an obvious mistake, which was not discovered until the register proceeded to execute the reference; and this mistake was corrected by the modified instructions. Whenever an account is to be taken, every thing relating to it, either as to the mode of stating, or as to the items composing it, must, of necessity, remain *sub judice* until the account is closed.—2 Dan. Ch. Pr. 1233–4; *Clark v. Hall*, 7 Paige, 382; *Murray v. Blachford*, 2 Wend. 221; *Millspaugh v. McBryde*, 7 Paige, 509; *Leitch v. Crumpton*, 4 Paige, 476; *Beckman v. Peck*, 3 John. Ch. 415; *Lang v. Brown*, 21 Ala. 199. (3.) As against the complainant, the sale under the mortgage operates only as an assignment of the mortgage, and the assignee (or purchaser) occupies the same position as the mortgagee.—2 Jones on Mortgages, §§ 1118, 1902; 2 Perry on Trusts, § 602; *Goldsmith v. Osborne*, 1 Edw. Ch. 560; *Driver v. Fortner*, 5 Porter 9; *Ten Eyck v. Casad*, 15 Iowa, 524; *Strang v. Allen*, 44 Ill. 428. (4.) Adams being chargeable as mortgagee in possession, the chancellor's directions as to the mode of stating the account are correct.—*Pearson v. Bailey*, 23 Ala. 537; *Sloan v. Frothingham*, 72 Ala. 589. The claim for commissions was properly disallowed, because Adams denied the right of the complainant, and claimed to hold for himself.—2 Jones on Mortgages, § 1132. The claim for costs and attorney's fees, in the case against Adler, was properly disallowed for the same reason, and because there was no proof that they were necessary or proper.

SOMERVILLE, J.— This is the second appeal in the present case, the former one having been decided at the December term of this court, in the year 1881. It is reported under the title of *Adams v. Sayre*, 70 Ala. 318, from an examination of which, as also from the present record, it will be seen that the first decree of the chancellor, rendered in April, 1880, was affirmed. The decree here appealed from, and upon which errors are assigned for our review, was rendered in April, 1882.

The first point which we deem necessary to consider is, whether certain changes made by the chancellor in his former instructions to the register, to guide him in stating the account ordered, are of such a nature as to amount in law to an alteration, or calling in question of his first decree. If such be the case, it can not be denied that the last decree, having been rendered at a subsequent term, and being repugnant to the

first, would be erroneous.—Rules of Chan. Prac., No. 84; Code, 1876, p. 173; *Ansley v. Robinson*, 16 Ala. 793.

The purpose of the bill is to redeem certain mortgaged property, which had been sold under a power of sale contained in the mortgage, and purchased by the defendant, Adams, by alleged collusion with the mortgagee, Joseph, who himself was invested with authority to purchase at his own sale. The bill was filed in a double aspect, which we held not to be multifarious, using the following language in our former opinion : " In each aspect," we said, " it seeks to avoid the sale under the execution of the power in the mortgage to Joseph, and to redeem the property—in the one alternative, under the terms of the alleged agreement ; and in the other, according to terms imposed by law. The reliefs thus afforded, in the two alternatives presented, are similar, if not identical in kind, and are certainly not repugnant in their nature."—*Adams v. Sayre*, 70 Ala. 325. The chancellor, in his decree then under review, had simply overruled the demurrers filed to the bill, adjudged that the complainant was entitled to relief, without specifying the particular relief, and referred the matter to the register, for an account to be stated, under certain instructions as to the mode in which this should be done. One theory of the bill was, that Adams had purchased the property at the mortgagee's sale, charged with notice of the complainant's agreement with Joseph as to the terms of the redemption, and subject to all his equities against Joseph as to payments and usurious interest ; and if not, in the alternative, that Adams, occupying a fiduciary relation towards complainant, and being in the possession and management of the mortgaged property, with the authority to rent and sell it, could not become the purchaser of it without the consent of his principal. The chancellor did not give his reasons for decreeing to complainant the relief prayed, nor was there anything in his decree which indicated upon which aspect of the bill it was based, except the inference afforded by his instructions given to the register as to the mode of stating the account ; the sole purpose of which was to ascertain the amount due by complainant to Adams, and which he was compelled to pay in order to obtain the benefit of the relief granted, which was the right to redeem the property. This court affirmed the decree, evidently, upon the idea that the proof sustained it in the second aspect, as the reasoning in the opinion clearly shows ; no reference being made in discussion to the testimony or principles of law bearing upon the first aspect, but only upon the second. We held the decree right, because Adams, being Sayre's agent to sell the mortgaged property, could not be permitted " to traffic with the subject-matter of the agency, without the consent of his principal, so as to reap a profit for him-

[Adams v. Sayre.]

self."—*Adams v. Sayre, supra* ; *Pearce v. Gamble*, 72 Ala. 341.

It is the settled doctrine of this court, that, as a general rule, there can be but one final decree upon the merits of a chancery cause, which is required to settle all the *equities* litigated, or necessarily involved, in the issues of the particular suit. The policy of the rule is found in the indisposition of the appellate courts to multiply appeals, by undertaking " to review litigated cases by *piecemeal*."—*Randle v. Boyd*, 73 Ala. 282. A decree may, nevertheless, be partly final, and partly interlocutory ; final, so far as it determines all issues of law and fact, constituting the equities proper of the cause, and interlocutory as to ulterior proceedings regulating its mode of execution. There may be, therefore, and often are, under our system of·chancery practice, two final decrees in the same cause ; the one settling the substantial merits of the case, and the other based on the final report of the register, upon an account taken between the parties computing damages, from each of which an appeal will lie to this court.—*Malone v. Marriott*, 64 Ala. 486 ; *Jones v. Wilson*, 54 Ala. 50 ; *Walker v. Crawford*, 70 Ala. 567.

No general rule can probably be stated, which would define accurately, for all possible emergencies, what constitues the equities of every case. These equities embrace the substantial merits of the controversy—the material issues of fact and law litigated or necessarily involved in the cause, which determine the legal rights of the parties, and the principles by which such rights are to be worked out. In *Cochran v. Miller*, 74 Ala. 50, we discussed the principles by which we would be governed in testing the finality of the first decree, and the extent of it. We then used the following language : "If it settle all the equities between the parties, it is, to that extent, final. If it is necessary to take an account, or other proceeding must be had to carry it into effect, to this last named extent it is interlocutory, and may be moulded, modified, or altered by the chancellor, as any other interlocutory decree may be. The principles of relief can not be altered, for they are final. Directions for carrying the decree into effect may be modified, for they are interlocutory." It was accordingly held in that case, that so much of the decree as merely declared the rules by which the register was to be guided in stating the account, or computing the amount of damages due, was interlocutory, and could be modified at will by the chancellor at any time during the progress of the cause. The instructions given the register for carrying the decree into effect, not involving equities adjudged by the decree, and the decree itself, settling the equities of the case, are separate and distinct in their nature—the latter final, the former

[Adams v. Sayre.]

interlocutory. The doctrine of this case is fully reaffirmed in *Voltz v. Voltz*, 75 Ala. 555, which was decided at the last term.

In *Jones v. Wilson*, 54 Ala. 50, where many authorities on this question are reviewed, a bill had been filed by certain beneficiaries, to establish a trust in lands, and to be let into possession, with an account for rents and profits. The court, observing that the whole point of controversy was one as to the paramount title to the lands, which depended upon the validity of a sale under a trust deed, said further, that when the chancellor "adjudged the bill had equity, and the sale under which the respondent claimed title and possession was null and void, the subject-matter of controversy was determined. Further orders, such as an account of rents and profits, may have been necessary to carry the decree into full effect, but they were merely incidental to the right adjudged to the complainants."

The whole equity of the present bill is comprehended in the adjudged right of the complainant to redeem the mortgaged premises, upon the condition of paying to the purchaser the amount justly due him, and the ordering of such account to be taken for the ascertainment of such amount. This, we repeat, was, in substance, the paramount equity of the whole case. The directions given to the register relate to the mode of taking the account, which involves a necessary step in the execution of the first decree. They adjudge strictly no settled principle of relief, but rather involve matters incidental to the relief given, in the meaning of this phrase as used in the authorities. It is no uncommon practice, for a chancellor, ordering an account to be taken, to instruct the register to state his account in two or more distinct aspects, and to adopt the one or the other, on the coming in of the report, as it may be supported by the testimony. A second appeal may be taken from the decree based on this report; and "on such secondary appeal," as observed by STONE, J., in *Cochran v. Miller* (74 Ala. pp. 63–4), "questions may be raised growing out of instructions to the register, the introduction of testimony before him, and exceptions filed to his report." We are of opinion, that the chanceller was empowered to modify these directions, and such modification constituted no alteration of his first decree obnoxious to legal objection. There seems to be nothing in most of these instructions, not ordinarily incident to the taking of such an account. They do not presume to adjudge any equities of the parties, which were involved within the controverted issues of the bill and answer.

This brings us to a second inquiry, involving the correctness of the second decree rendered by the chancellor, in April, 1882, based upon his directions to the register.

It is not contended that the purchase made by Adams at the

[Adams v. Sayre.]

mortgage sale was void, any more than a purchase by a mort-
gagee at his own sale would be.   It was not void, but merely
voidable at the option of the complainant, seasonably expressed,
and could be either affirmed or disaffirmed by him.—*Dozier
v. Mitchell*, 65 Ala. 511; *Downs v. Hopkins, Ib.* 508; *Comer
v. Sheehan*, 74 Ala. 452.

There is no element of fraud, which we can discern, in the
conduct of Joseph, who, being the owner of the mortgage by
assignment, stood in the shoes of the original mortgagee, his
assignor.   He was expressly authorized, it is true, to purchase
at the mortgage sale, but he was certainly under no obligation,
legal or moral, to do so.   The policy of the law, without the
previous consent of the mortgagee, in fact forbade him to do
so.   Perfect fairness and honesty in the conduct of the sale
was the only duty that could be properly exacted of him, under
the circumstances.   His agreement, therefore, with Adams, to
abstain from bidding, can not be properly characterized as a
breach of trust on his part, especially in view of the fact, that
the amount agreed to be bid by Adams does not appear to have
been an unfair or an unreasonable price for the property.   The
former decision in this case, as we have said above, is not based
upon the theory contended for by appellee's counsel, that Jo-
seph was guilty of a constructive fraud, in which Adams par-
ticipated; but that Adams, being also an agent to sell, could
not procure Joseph to sell the subject-matter of the agency, and
himself traffic in it, without the consent of Sayre.—*Adams v.
Sayre*, 70 Ala. 326.   The testimony does not satisfactorily show
that Adams bought with notice of complainant's equities as
against Joseph, and he does not stand in Joseph's shoes as a
mere assignee of the mortgage, but as a purchaser at a voidable
sale.   It is true that, after the sale, the balance of the mortgage
debt was assigned to appellant; but this was an extraneous mat-
ter, not agreed on prior to, but after the sale, and had no con-
nection with it.

The nature of the relief granted on bills like the present,
filed for redemption, is well settled.   The complainant is enti-
tled to have the sale set aside, upon the condition of himself
doing equity.   He is required, at least, to refund the purchase-
money with interest, with all sums expended by the purchaser
in repairs and improvements of a permanent nature, with taxes
and other lawful charges, to which interest may be added; the
purchaser being required to account for the rents and profits,
or for use and occupation, if he is in possession.—*Fox v. Mack-
reth*, 1 Lead. Cas. in Eq., Part 1, p. 172; *Dozier v. Mitchell*,
65 Ala. 511; *Downs v. Hopkins, Ib.* 508.

While the purchaser is chargeable with rents, and with inter-
est upon them, there is some difference of opinion, and perhaps

confusion, among the authorities, as to the time from which interest should be calculated. In taking the account, it falls largely within the discretion of the chancellor, as to how frequently rests shall be taken, in cases like the present. The ordinary rule of partial payments, as adopted by our statute, does not seem to us to be applicable, or just in all cases. The proper rule depends upon the amount of the installments of rent collected, and their frequency of collection. If very large, interest might be charged from the time of collection. If collected in small sums, *driblets*, as it is commonly called, rests may be made, varying in time from six months to one year. As observed in Jones on Mortgages: "The two essential principles are—*first*, that when there is a surplus of receipts in any year, above the interest then due, a rest shall be made, and the balance remaining after discharging the interest shall be applied to reduce the principal, so that the mortgage shall not continue to draw interest for the face of it, when in fact the mortgagee has in his hands money that should be applied to reduce the principal, and thereby make the interest less for the following year. *Secondly*, although the amount received in any one year be insufficient to pay the interest accrued, the surplus of interest must not be added to the principal, to swell the amount on which interest shall be paid for the following year; for that would result in the charging of interest upon interest, which is not allowed; but the interest continues upon the former principal, until the receipts exceed the interest due. These are the principles upon which the mortgagee's interest account is everywhere made up; and the cases in which they are stated are many, and in general accord."—2 Jones on Mort. § 1139, and cases cited. See *Harrison v. Harrison*, 39 Ala. 511–12; *Royall v. McKenzie*, 25 Ala. 368–9. In the present case, the register, in taking the account, will make rests every six months, which seems to us to be equitable.

The appellant was not entitled to charge for the management of the estate while he was in possession, claiming it as his own, and holding the legal title as he did. His commissions were properly disallowed, and also his expenses for attorney's fees and other costs of litigation, shown to have been incurred touching the mortgaged property.—*Hogan v. Stone*, 1 Ala. 496; *Barron v. Paulling*, 38 Ala. 292. He assumed the risk of losing his services, by any subsequent disaffirmance of the sale.

The effect of the sale was to cut off and bar the equity of redemption, and to satisfy and extinguish the mortgage debt, to the extent of Adams' bid at the sale, leaving only the unpaid balance as a subsisting debt in the hands of Joseph.—*Harris v. Mullen*, 71 Ala. 26. This balance having been assigned by Joseph to Adams, as a separate transaction, was a demand

[Ex parte Pearson.]

against Sayre, subject to all existing equities. It could, therefore, be reduced by payments made, or abated to the extent of any usurious interest entering into the transaction.

In estimating the rents of property which has been improved by such purchaser, they should be based upon the value of the property when he took possession, and not upon the increased value arising from improvements made.—*Dozier v. Mitchell*, 65 Ala. 512.

The decree of the chancellor is reversed, and the cause remanded.