## GUNN *vs.* BRANTLEY.

1. A mortgagee or trustee cannot deprive the mortgagor or *cestui que trust* of his equity of redemption, and create an adverse interest in himself, by a sale of the land without a decree of foreclosure and becoming the purchaser himself.

2. A bill filed by the *cestui que trust* to set aside a sale at which the trustee became the purchaser, is demurrable, if it does not contain an offer, or what is equivalent to an offer, to do what is equitable, by the repayment to the trustee of the amount actually paid by him.

3. But the bill is not demurrable on this ground, when it alleges that the rents and profits received by the trustee are sufficient to reimburse him for the amount paid by him, and the complainant offers, if they are not sufficient, "to abide the decree of the court."

4. The vendor is not a necessary party to a bill filed by one of his vendees against another, respecting transactions between them under a contract for the division of the land, when he has divested himself of all interest in the subject matter of the suit, by making title to the land to one of the vendees and taking up his bond for titles to the two jointly, and the complainant does not complain of his action in this respect.

5. If objections to testimony are taken before the commissioner and are overruled by him, they must be regarded as waived, unless brought to the notice of the Chancellor by exceptions filed or motion to suppress.

6. In all cases of concurrent jurisdiction, statutes of limitation are equally as obligatory in courts of equity as in courts of common law; and in many cases, mere lapse of time and the staleness of the claim will constitute a defence in equity, when the statute does not apply.

7. The mortgagor may redeem at any time within the period prescribed by the statute for the limitation of rights of entry and actions for the recovery of lands.

8. An answer contradicted in a material point loses its weight as evidence.

9. A mortgagee who purchases at a fraudulent sale made without a decree of foreclosure, is not entitled to compensation for improvements made by him on the land.

ERROR to the Chancery Court of Macon.

Heard before the Hon. W. W. MASON.

The bill in this case was filed by James Brantley, the de-

41

fendant in error, against Larkin R. Gunn, the plaintiff in error. It alleges, that, in the year 1837, Brantley and Gunn purchased from one Dozier Thornton a tract of land, containing six hundred and forty acres, at eleven dollars per acre, and that Thornton executed to them jointly his bond for titles thereto; that said Gunn, in part payment for said land, delivered to said Thornton a note on Townes & O'Brien for $4057, and that Brantley executed his two notes for the balance of the purchase money, with Gunn as security, one being for $1000, due December 25, 1837, and the other for $2075 70, due December 25, 1838; that for the purpose of securing Gunn against liability on his suretyship on said notes, Brantley allowed him to retain the bond for titles, and afterwards executed to him an instrument in writing transferring to him all the right, title and interest which he (Brantley) had therein, until the balance due on said notes was paid; that soon after their purchase, they verbally agreed to divide the land between them, Gunn taking all that part lying south of Osenappa creek, containing about four hundred and seventeen acres, and Brantley taking all that part lying north of said creek, being about two hundred and twenty-three acres; the price to be accounted for at $11 per acre; that Brantley paid his first note to Thornton in full, and $700 on the second note; that Thornton brought suit for the balance due on the second note, and recovered judgment against Gunn for $1630 89; that an execution was issued on this judgment, and was levied, by Gunn's direction, on that portion of the land which Brantley was to take under their division; that this land was sold under the execution, and was purchased by Gunn for $760; that it was worth $2500, at the time of the sale, but, by the fraudulent conduct and representations of Gunn, it only brought $760; that, before the sale under the execution, Gunn had obtained a deed from Thornton to the entire tract, and had surrendered to him the bond for titles; that Gunn took possession of the four hundred and seventeen acres lying south of Osenappa creek in December, 1838, and has been in possession ever since; that he also took possession of the two hundred and twenty-three acres immediately after the sale under execution, which was on the 27th November, 1840; that of this last named tract, about seventy

acres were cleared, and in good order for cultivation; and of the other tract he had about three hundred acres in cultivation for a long time, and had enjoyed the profits of the whole tract, from December, 1838, up to the time of filing the bill; which was on November 1, 1847, and that these profits were worth $1000 a year; that of the sum for which Brantley executed his note to Thornton, Gunn should have paid the balance after deducting $2450, that being the sum to which the two hundred and twenty-three acres allotted to Brantley on the division would amount at $11 per acre; that Brantley has never assigned or conveyed to any one his interest in said land, except to Gunn, as aforesaid, to secure him against his liability on said notes; that upon a just accounting between him and Gunn, of the rents and profits of the land, he will not be indebted to Gunn, although the latter may have paid off the judgment recovered by Thornton against him; but if complainant is mistaken upon this point, and he should be found indebted to said Gunn, then he offers to abide the decree of the Chancellor; that if Gunn is allowed to retain the whole of the land, he ought to be charged with the $1700 paid by Brantley, and interest thereon; and if he is allowed to retain only the four hundred and seventeen acres, then Brantley is entitled to the possession and title of the remaining two hundred and twenty-three acres, with the value of the rents and profits, after deducting therefrom about $750, that portion of the $2450 which has not been actually paid to Gunn by Brantley.

The bill prays, that an account may be taken of the rents and profits of the land, and of each division thereof; also, of the amount of purchase money which each one paid, and ought to have paid; that a decree be rendered in one of the modes insisted on in the bill, and for general relief.

Gunn answers, admitting the purchase at the price charged, the execution of the bond for titles as charged, the payment by Gunn of the note on Townes & O'Brien, the execution of two notes as charged by Brantley, and that respondent was security on them; also the payment of the $1700 by Brantley on his notes, and the division of the land as charged. He insists, that, after these payments were made by Brantley, he and respondent had a settlement, on which it was ascertained

that there was due from respondent, for that portion of the land which he was to get on the division, the sum of $385 27, in addition to the amount paid to Thornton in the note of Townes & O'Brien, and that respondent paid this sum to Brantley on the 7th December, 1838, and took his receipt for the same; that on the same day, and after the receipt was given, Brantley assigned to respondent his interest in the bond for titles, and respondent denies, to the best of his knowledge and remembrance, that Brantley ever made any other instrument or assignment connected with said bond. He further admits, that he obtained title to the entire tract from Thornton, and that, judgment having been rendered against him in favor of Thornton, as charged, he directed the sheriff to levy the execution which was issued thereon on the two hundred and twenty-three acres of land which Brantley was to take under the division; that said land was sold, and was purchased by respondent for $760. He denies all fraud in relation to said sale, and alleges that he has since paid to Thornton the balance due on the judgment. The other allegations of the answer it is unnecessary to notice, as they have no connection with the points decided.

An amended bill was filed, which charges that the only object of the transfer of the title bond, whatever may have been its form, was, to secure Gunn against his liability on Brantley's note to Thornton, and to give him a lien on Brantley's interest in the lands, to the extent of his indebtedness for the same; that Gunn has materially injured the two hundred and twenty-three acres of land, since it has been in his possession, by clearing it.

The answer to the amended bill, amongst other things, insists that Brantley's transfer of the title bond was absolute, and that his interest in the land was thereby extinguished. The bill was demurred to, for want of equity, and because complainant made no offer to refund the amount paid by respondent for him; and the statute of limitations of six years was set up by way of plea.

The evidence shows that the title bond was transferred to Gunn to secure him as Brantley's surety on the notes for the purchase money of the land, and that when the balance due on said notes was paid, if Gunn had then obtained title from

Thornton, he was to convey to Brantley the two hundred and twenty-three acres which the latter was to take under the division; that Gunn had materially injured that portion of the land, by clearing it; that Gunn paid Brantley the sum of $385 77, on the 7th December, 1838, as a portion of the $1000 paid by the latter to Thornton on his first note; that Gunn directed the sheriff to levy the execution on Brantley's portion of the land, and became the purchaser at the sale for $760, which was considerably below the value of the land at that time. The officer who sold the land testified, that while Thornton was bidding at the sale, Gunn complained to him, (Thornton,) and with a good deal of feeling told him, "that he need not run up the land so, as his money was sure to him; and that all he, Gunn, wanted was, a title to the land." Another witness testified, that, in relation to the anticipated suit by Brantley against Gunn, the latter observed, "that if Brantley did sue for and recover the land, he would keep it in law long enough to tear it up and wear it out."

Several objections appear to have been taken before the commissioner, by the defendant, to the complainant's interrogatories, and these objections are endorsed by the commissioner on the interrogatories; but the record no where shows that they were acted on by the Chancellor, or that they were brought to his notice.

Upon the hearing, the Chancellor decreed the title to the entire tract to Gunn, free from all right or interest which Brantley had therein; and directed Gunn to pay Brantley the sum of $2650 38, the amount of the purchase money for the two hundred and twenty-three acres, deducting therefrom the said sum of $385 77, and all costs.

From this decree Gunn prosecutes a writ of error, and assigns for error: the admission of the evidence objected to, not sustaining the demurrer to the bill, and the rendition of the final decree.

G. W. GUNN and BELSER & HARRIS, for plaintiff in error:

1. The bill cannot be sustained as a bill to redeem, as a mortgagor is not permitted to come into equity for that purpose, except upon payment of the whole amount due. Smith

v. Kelly, 27 Maine, 237; 3 Sandford's Ch. 450; 1 Strobh. Eq. 257. And where an agreement is to convey land, in consideration of the payment of a certain sum of money, equity will not compel a conveyance until the money is paid. Stone v. Buckner, 12 Sm. & M. 73; 2 Halst. 175; 2 Pick. 540; 8 Metcalf, 19; 6 Dana, 473; 8 Shep. 126; 10 Paige, 49; 7 Sim. 319; 11 Halst. 300; 7 Paige, 179; 2 Mass. 493; 8 ib. 551; 11 ib. 469; 3 Pick. 203; 11 ib. 475; 12 ib. 47; 14 ib. 397; 9 Sm. & M. 230; ib. 167. Such bills do not rest upon the same basis with bills to rescind a contract, relied on by defendant in error. 15 Ala. 502; 4 Porter, 297; ib. 374; 16 Ala. 196; 14 ib. 114; 5 Porter, 345; 1 A. K. Marsh. 287; 18 Johns. 144; 2 Pick. 540. Whether the transaction was in the nature of a mortgage or a conditional sale, under the most favorable view to complainant, respondent's obligation was, to convey to complainant upon his paying the balance due for the land.

2. Neither can the bill be sustained on account of the alleged fraud or mistake; first, because there has been a want of common and ordinary diligence. 3 Ala. 352. The fraud relied on must be distinctly alleged, and the proof must be clear, full and convincing. 11 Ala. 187; 10 ib. 548; ib. 116; 6 ib. 518; 12 ib. 678; 2 Porter, 526. Nor will the court impute fraud, where the facts and circumstances out of which it must arise, may consist with pure intentions. 2 Porter, 58; 15 Ala. 149; 5 ib. 90; 3 ib. 352. The time of the discovery of the fraud must be distinctly stated and proved. Besides the uncertain and contradictory statements of the bill, the allegations are not sustained by the proof. 5 Ala. 90; 6 ib. 518; ib. 581; 1 ib. 330; 16 ib. 793; 11 ib. 960; 15 ib. 634; 13 ib. 681. The allegations of the bill as to fraud are not sustained by the proof in a single particular, unless it may be in an immaterial point as to the sheriff's sale; and this proof is made by the deputy sheriff, who seems to have been a very willing witness for complainant.

3. If complainant had any equities by the terms of his contract, he has forfeited all right to relief, and his demand has become stale, although the statute may not govern the case. He had full notice in 1839, when the legal title vested in respondent by his purchase, and has remained silent from that

time until November, 1847. 9 Ala. 663; 3 ib. 762; 13 ib. 246; 2 ib. 555; 1 ib. 650; 17 ib. 472; 5 ib. 90; 2 Porter, 58. Relief will not be given to a party who has been guilty of long acquiescence and laches, while out of possession, and can show no actual hindrance or impediment, caused by the fraud or concealment of the party in possession. 2 Howard's U. S. R. 234. Complainant's acquiescence amounts to a waiver of the equity which he now seeks to set up. 2 Stewart's R. 520; 5 Porter 345; 6 Ala. 518. In cases like the present, the time will be computed from the date of the transfer.

4. The decree is erroneous, in requiring respondent to pay to complainant money which he had paid to Thornton, before the transfer of the bond, and with which respondent had no connection. This is subversive of every principle of equity, and without a precedent in chancery practice; it makes an entirely new and different contract between the parties from that which they had made for themselves; it makes Gunn take the entire tract of land, at a price greatly exceeding the price originally paid, and also makes him pay additional interest to complainant, for whom he had already made payment of a large sum. The decree cannot be sustained. 2 Barb. S. C. R. 586; 2 Johns. Ch. 125.

5. Upon the payment by Gunn of the debt to Thornton, he had the right to be subrogated to Thornton's liens, Champlin v. Williams, 9 Barr's R. 34; and the same rule applies, where different persons own distinct parcels; the one paying holds a lien upon the whole. 20 Vermont, 402; 1 Strob. Eq. 356; 7 New Hamp. 392; 5 Pick. 146; 8 ib. 497; 17 ib. 47; 19 ib. 231; 6 Paige, 583; 4 Johns. Ch. 370. But the receipt and transfer, in the absence of fraud or mistake, present the contract between the parties, and every presumption is in favor of their validity. 2 Porter, 520; 12 S. & M. 74. By the terms of this contract, Gunn had an undoubted right to receive the title from Thornton; nor is there anything in his acceptance of title which does not comport with fair and honest intentions. 2 Sugden on Vendors, 148; 8 Ala. 876; 10 ib. 636; 7 ib. 142; 2 Barbour's R. 16.

6. The sale of Brantley's portion of the land was, under the circumstances, consistent with equity and fair dealing. 9

Paige, 648; 2 Barbour's R. 270. The low price which the land brought, is not sufficient to induce a court of equity to set aside the sale, even upon the application of a creditor. Farmers' Bank v. Douglass, 11 S. & M. 469. The equity of redemption was the subject of seizure and sale under execution; and such sale divested all title of the mortgagor, and invested the same in the purchaser. 14 Ala. 114; 1 ib. 27; 7 ib. 386; 4 Kent's Com. 161; 5 H. & Gill. 312; 10 Johns. 481; 3 S. & P. 397; 7 Ala. 142; 10 ib. 636; 11 ib. 236; 8 ib. 876; 6 Iredell, 216; 5 Gill & J. 75; 11 Paige, 243; 10 S. & R. 261; 3 Edwards, 390; 9 Vermont, 155. If the sale had not taken place, Gunn had an undoubted right to hold the title until Brantley paid the balance of the purchase money. The sale, then, could not discharge Brantley's obligation to make payment.

7. Complainant having called for an account, and charged fraud, the responsive statements in the answer are conclusive, unless directly controverted by the evidence. 7 Ala. 582; 4 ib. 60; 16 ib. 600; 3 ib. 458; 19 ib. 370. A mortgagee in possession is not chargeable with the value of rents, except to the amount actually received. He is not chargeable with interest on rents, and is entitled to pay for improvements. McClanahan v. McClanahan, 6 Humph. 99; 6 Paige, 480; 2 Barbour, 216; 6 Gill & J. 275; 1 Johns. Ch. 620. The authorities relied upon by defendant in error are inapplicable; complainant will not be allowed, after treating the transaction as a mortgage, now to change his position, in order to defeat the compensation for improvements. 1 Ala. 496. Rents and profits can only be decreed upon real estate in the condition in which it was when sold. 9 Pick. 171; 8 Shep. 465; 6 Ala. 542; 7 Metcalf, 157; 2 Sandford's Ch. 273; 1 N. Hamp. 167; 1 Hill's Ch. 501.

8. The demurrer should have been sustained. Woodward v. Wood, 19 Ala. 213.

Was not the transaction an absolute sale, with the right to re-purchase? 7 Ala. 724; 4 Kent's Com. 144.

All the assignments of error are insisted on.

S. F. RICE, contra:

1. A mortgagee who has taken possession of the mortgaged

property, if it be a farm, is bound to keep it in good ordinary repair; he is bound to good ordinary husbandry and to procure a tenant or cause the farm to be tilled. He must account for the rents and profits actually received, or those which might have been received by reasonable care and prudence. He is bound to lay out money to keep the farm in repair and to preserve it, but he is not authorized to make new improvements and tack the expense to the amount due upon the mortgage, or pay it out of the rents and profits, except under very extraordinary circumstances. Shaeffer v. Chambers, 2 Halsted's Chancery Rep. 548; McConnell v. Holobush, 11 Illinois Rep. 61; Rogers v. Rogers, 1 Paige, 188; Hosea v. McLane, 14 Ala. 194.

2. It is a fraud for an agent to avail himself of his confidential relation to drive a bargain, or to create an interest adverse to that of his principal in the transaction; and the fraud creates a trust, even when the agency can be proved only by parol. Jenkins v. Eldridge, 3 Story's Rep. 181; 3 American Chancery Dig. 385, §§ 69, 70; Elliott v. Armstrong, 2 Blackf. Rep. 198.

3. It is a sound principle, that when one person, by his own fraud, intermingles his property with that of another, with intent to injure the latter, the person thus guilty of fraud must suffer. And if, by such fraud, the property of the innocent party is irreparably injured, and the court cannot see that it can indemnify him in any other way than by ordering the author of the fraud to restore the money paid on the property by the innocent party, with interest, this restoration will be ordered, and the wrong doer will be allowed to retain the property. Lanier v. Bank, 18 Ala. 628.

4. The statute of limitations cannot avail the defendant, even if it were properly pleaded. But it is not properly pleaded. Whether this be treated as a bill by a mortgagor to redeem, or to enforce a trust, the statute of limitations is not a bar. Mason v. Maury, 8 Porter's Rep.; Fenwick v. Macy, 1 Dana's Rep. 280; 3 American Chancery Digest, 46, § 242; ib. 50, § 282; Falls v. Torrance, 4 Hawk's Rep. 413. The letter of defendant, found in the record as part of the evidence, shows that the defendant cannot successfully claim the benefit of the statute of limitations.

5. The Chancellor's decree is founded upon sound principle. Harrison v. Mock, 10 Ala. 185, and cases there cited; Oliver v. Piatt, 3 Howard's Rep. (U. S.) 401; Green v. Winter, 1 Johns. Ch. R. 39; Osgood v. Franklin, 2 ib. 26. This is a case in which the fraudulent conduct of the trustee has rendered it impossible for the court, by the application of ordinary rules, to indulge any thing like a certain conviction that the injured party would receive adequate redress. Who shall incur the hazards which must result from the uncertainties and complication created by this fraudulent conduct? Shall the wrong-doer profit by them, or shall he be permitted to drag the court and the innocent party through all the mazes of his serpent-like course, in pursuit of justice—which pursuit may prove fruitless? Shall he do this, when the plain rule of restitution of the money and interest and quieting of his title, works perfect justice? Is the complainant to be deprived of his election?

GOLDTHWAITE, J.—The facts which, upon the bill, answer and evidence, we consider as established beyond all controversy, are, that, on the 16th of October, 1837, Gunn, the plaintiff in error, and Brantley, the defendant in error, made a joint purchase from Dozier Thornton, of the north half of section twenty-nine and the south half of section twenty in township twenty-one, and range twenty-seven, at the price of eleven dollars per acre; for which land said Thornton executed to them jointly his bond for titles; that about the time of this purchase, or soon after it, the parties agreed to divide the land, Gunn taking all south of Osenappa creek, containing four hundred and seventeen $\frac{7}{100}$ acres, and Brantley all north of the same creek, containing two hundred and twenty-three $\frac{3}{100}$ acres; that this division was made; and Gunn took possession of his portion; that the lands taken by each were to be accounted for at eleven dollars per acre; that, at the time of the purchase, Thornton received from Gunn, in part payment of the purchase money, a note on Townes & O'Brien, for $4057, and for the balance of the purchase money Brantley executed his notes, one for $1000, due December 25, 1837, and the other for $2075 70, due December 25, 1838, with Gunn as his security; that the

whole of the first note was paid, and on the second the amount of $700, in October, 1839; that, for the purpose of saving Gunn from any loss on account of his securityship, he was permitted to retain the bond for titles, and that subsequently, on December 7, 1838, Brantley, for the same purpose, transferred to him, by writing under seal, all his right, title and interest in said bond, until the balance due should be paid by him, and when paid, then, if Gunn had obtained titles to the land, he was to convey to Brantley the portion to which he was entitled under the division; that a judgment was obtained against Gunn and Brantley, for the balance due on the second note, and the land which the latter was to take under the division was levied on, by the direction of Gunn, and sold under execution, he having before the sale obtained title from Thornton to the entire tract, and at the sale becoming the purchaser, for the price of seven hundred and sixty dollars.

W think it clear, upon this state of facts, that Gunn, as soon as he obtained the legal title from Thornton, became the trustee for Brantley, as to the lands to which the latter was entitled under the division; and that by the agreement between them, as expressed in the instrument bearing date December 7, 1838, Gunn might look to that portion of the land, as a security against his liability for Brantley; and the rules which govern relations of this character are applicable in the present case. The mortgagee cannot sell the land, without first obtaining the decree of a court of equity upon a bill for a foreclosure; and as Gunn was, by the terms of the trust, only authorized to hold the interest of Brantley as a security, until the payment of the purchase money due by him, it would be in direct conflict with the well established principles of equity, to allow the trustee to deprive the *cestui que trust* of his equity of redemption, by the sale of the land without a decree of foreclosure, and, by becoming himself the purchaser, to create an interest adverse to the person for whom he is a trustee. Prevost v. Gratz, Peters' C. C. R., 364; Jenkins v. Eldridge, 3 Story's R., 81; Powell v. Williams, 14 Ala., 476. It is true, that in the case of a purchase by the trustee, the *cestui que trust* will be required to do what is equitable, by the repayment of the money actually paid;

and it is necessary, that a bill, the object of which is to set aside a sale made to the trustee, should contain an offer, or what is equivalent to an offer, to do this. But in the present case, the bill alleges that the rents and profits of the land are sufficient to reimburse Gunn, in the amount paid by him, and if not sufficient, the complainant offers to abide the decree of the court, which is equivalent to an offer to pay what may be found due; and the objection to the bill, by way of demurrer, upon this ground, cannot, therefore, be sustained.

Neither was it necessary that Thornton should have been made a party to the bill. He had made titles to the land to Gunn; had taken up his bond; and having thus divested himself of all interest in the subject matter of the suit, it was unnecessary for Brantley, who did not complain of his action in this respect, to bring him before the court as a party.

In relation to the assignments of error based upon the admission of various portions of the testimony of the complainant below, it need only be observed, that although it appears that the objections were made before the commissioner, by the endorsement of the objection upon the interrogatories, yet there is nothing in the record which informs us that they were insisted on before the Chancellor. If objections to testimony were taken before the master, and were overruled by him, they could only be brought before the Chancellor by exceptions, and unless this was done they must be considered as waived. So, if overruled by the commissioner, the objections must be regarded as waived, unless brought to the notice of the Chancellor by exceptions filed, or motion to suppress.

As to the statute of limitations the rule is, that in all cases of concurrent jurisdiction, statutes of this character are equally as obligatory in courts of equity as in the common law courts, 2 Story's Equity, § 1520; Maury v. Maury, 8 Porter, 211; and in many cases, mere lapse of time and the staleness of the claim, in cases in which the statute does not apply, will in equity constitute a defence. In such cases, courts of equity, says Mr. Justice Story, "act sometimes in analogy to the law, and sometimes upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands,

by refusing to interfere where there has been gross laches in prosecuting rights, or long or unreasonable acquiescence in the assertion of adverse claims." 2 Story's Equity, § 1520. In the case under consideration, the instrument which gave Gunn the right to hold the interest which Brantley had in the purchase was executed in December, 1838, and the bill was filed in November, 1847. The transfer is in reality an equitable mortgage, and the rule as between mortgagor and mortgagee allows the former to redeem, at any time within the period prescribed for the limitation of rights of entry and actions of ejectment. 2 Story's Equity, § 1028. Applying this rule in the present case, Brantley, under the analogies of the law as determined by the statute of limitations of this State, in relation to rights of entry and actions for the recovery of lands, (Clay's Digest, 327, § 83, 329, § 93,) would have had a clear right to redeem at the filing of his bill.

In relation to fraud: The bill charges that the two hundred and twenty-three acres of land were worth about twenty-five hundred dollars; that it only sold for seven hundred and sixty dollars at the sheriff's sale; that Gunn became the purchaser, and that it was in consequence of his fraudulent conduct and representations that it did not bring its value. The answer, however, positively and unequivocally denies the charge of fraud, and the testimony of the witness Griggs is the only evidence which is direct upon this point. This witness states, that he sold the land, that Gunn was present and took a deep interest in the sale, and that while Thornton was bidding he said to him, "that he need not run the lands, as his money was sure to him, and that all he, Gunn, wanted was, a title to the land." If the answer was not impeached, this evidence would not be sufficient to outweigh it. But we do not regard the answer as entitled to full credit; it is equivocal and evasive, in response to the original bill, in relation to the transfer of the bond, which, the complainant there charges, was made solely for the purpose of securing Gunn as the surety of Brantley; and in the answer to the amended bill, it is insisted "that the transfer was absolute, and the interest of the complainant in the land by said transfer extinguished." This is equivalent to a denial that the transfer was other than an absolute one, and is contradicted by the terms of the in-

strument itself, which was in the possession of Gunn for a long period. The rule is, that an answer contradicted in a material point loses its weight as evidence. Pharis v. Leachman, 20 Ala., 662, and cases there cited. The fact that the land was levied on by the direction of Gunn, and purchased by him at a price considerably under its real value, must also be taken into consideration, in connection with the evidence of the witness Griggs; and these circumstances, united with the impeachment of the answer in relation to the transfer, and the evidence of the witness referred to, are sufficient to establish the allegation of fraud, as charged in the bill.

The complainant is clearly entitled to a decree; but as the agreement between the parties was, that Gunn should be entitled to hold the lands, to indemnify him against his suretyship for Brantley, a decree could not properly be rendered, which would have the effect of changing the contract which the parties themselves have made. To give the land to Gunn, and require him to pay Brantley the amount of the purchase money which he has paid, would be to create a new contract. Brantley is entitled to the portion of the land which he was to take upon the division, all lying north of Osenappa creek, on the repayment of the amount which Gunn has paid. He is entitled to the rents and profits actually received during the time the latter has been in possession, as well as those which he might have realized by reasonable care and prudence, or by ordinarily good husbandry; and he is also entitled to full indemnification for the injury which the land has sustained by the unauthorized act of the trustee in possession. Gunn is not entitled to compensation for improvements made by him, under a title procured by fraud. Van Horne v. Fonda, 5 Johns. Chan., 388, 416.

The decree of the Chancellor must be reversed; and an account must be taken by the master, of the rents and profits of the two hundred and twenty-three acres from the first of January, 1841, with interest on the same each year, and also the consequential damages which have been done to the land by the plaintiff in error, by clearing the same; and the defendant in error, Brantley, must be charged with the amounts paid by Gunn, as security for the amount due from him for the purchase money of the two hundred and twenty-three

acres, and the costs of the suit at law, and interest upon such amounts from the time of payment by the plaintiff in error; also, the sum of three hundred and eighty-five $\frac{7}{100}$ dollars, with interest from December 7, 1838; and if such rents and profits, with the interest and damages, exceed the charge against the defendant in error, a decree must be rendered against the plaintiff in error for the excess, and the title to the two hundred and twenty acres decreed to Brantley. And if the charges against Brantley exceed the amount of the rents and profits and damages taken on such account, a decree must be rendered, that he pay the same within a short day, or that the two hundred and twenty acres of land be sold, and the proceeds applied to the payment of the same, with interest, and that he be forever barred by such sale of all interest or equity in the premises.

As to the costs in this court, we do not think the defendant in error without fault. He failed to make the payments which he agreed to make; he involved his security and subjected him to the inconvenience of making the payments which he should have made; and he has been anything but diligent in the prosecution of his rights. He must pay the costs of this court.