# Adams *v.* Sayre.

*Bill in Equity by Mortgagor, against Assignee of Mortgagee, for Account and Redemption.*

1. *Filing bill in double aspect.*—Under our practice, a bill may be filed in a double aspect, embracing alternative averments, when each aspect entitles the complainant to substantially the same relief, and the same defenses are applicable to each; but, if the claims to relief are so distinct as to require inconsistent and repugnant reliefs, and different defenses, the bill is multifarious.

2. *Same.*—A mortgagor, seeking to avoid a sale of the property under a power in the mortgage, and to redeem, may file his file in a double aspect—claiming relief, in the alternative, under an agreement between himself and the mortgagee, of which the purchaser had notice, or as matter of legal right arising from the relations between them.

3. *Offer to do equity.*—In a bill to redeem by the mortgagor, and to set aside a sale under the mortgage, at which his agent became the purchaser, an offer to pay what is due, accompanied with an averment of his ignorance of the amount, and his unsuccessful application to the defendant for an accounting, is sufficient.

4. *Purchase by agent at mortgage sale.*—An agent, having control of real estate, renting it out, collecting the rents, paying taxes and insurance, and having power to sell, can not himself become the purchaser of the property at a sale under a mortgage, and hold it against his principal; especially where, by private agreement with the mortgagee, he induces the latter not to bid against him.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 11th April, 1879, by William D. Sayre, against James R. Adams and Thomas Joseph; and sought a redemption of a certain brick store-house and lot in the city of Montgomery, and an account of the mortgage debt, rents, &c. The mortgage, a copy of which was made an exhibit to the deposition of Adams, was dated January 11th, 1873, and was given to secure the payment of a promissory note for $3,100, of even date with the mortgage, and payable twelve months after date, to William F. Joseph or order; which note was signed by said W. D. Sayre, and was given for money borrowed by him from said William F. Joseph. The note and mortgage were assigned by said W. F., after the maturity of the debt, to said Thomas Joseph; and on the 7th May, 1877, the debt being still unpaid, the property was sold by said Thomas Joseph, under a power contained in the mortgage, and was bought at the sale by said James R. Adams, to whom Joseph executed a conveyance as the pur-

[Adams v. Sayre.]

chaser, and also transferred to him the note and mortgage. The amount bid at the sale under the mortgage, and recited in the deed to Adams as its consideration, was $3,120; and a credit for this amount, as the proceeds of sale of the property, was entered by Joseph on both the note and mortgage, which he assigned on the same day, without recourse on himself, to said Adams. The bill alleged that the sum actually borrowed by complainant from William F. Joseph was $2,542, the note being made to include usurious interest agreed to be paid; that partial payments of interest were made, both before and after the transfer to Thomas Joseph; that Thomas Joseph had notice of the usury in the original transaction, and granted an extension of the debt, from time to time, on the payment of usurious interest to him, until April 25th, 1877, when, being about to foreclose the mortgage, he entered into a written agreement with complainant, which was signed by him, and which was made an exhibit to the bill, in these words:

" *Whereas*, I am the holder and owner of a certain promissory note, executed by W. D. Sayre on the 11th day of January, 1873, for the sum of $3,100, payable to the order of W. F. Joseph, and due twelve months after date; and also of the mortgage to secure the said promissory note, executed at the same time, and which said mortgage is on a certain store and lot," describing it; " which said promissory note and mortgage were transferred and assigned to me by the said W. F. Joseph; *and whereas*, under and by virtue of the terms of said mortgage, I am about to foreclose the same, by selling the property embraced in said mortgage, at public auction; *and whereas*, by the terms of said mortgage, I have the right to bid at said sale, and to become the purchaser of said property, should I become the highest bidder: Now, therefore, in consideration of one dollar to me in hand paid by the said W. D. Sayre, the receipt whereof I do hereby acknowledge, I have agreed, and do hereby agree with the said W. D. Sayre, that, in case I am the purchaser of said property at said sale, the said W. D. Sayre shall have the right to redeem said property, at any time within two years from the date of said sale and purchase by me, on the following terms, to-wit: that is to say, I am to credit the said promissory note and mortgage with the net proceeds of the rents of said property, and the said Sayre is to pay any balance that may be due on said promissory note at the time of said redemption, including interest on the same; and from said rents are to be deducted, also, the expenses contemplated by said mortgage, incident to the foreclosure of the same. In witness whereof," &c.

The bill alleged, also, that the amount actually due on the note at the time of the sale under the mortgage, deducting the

[Adams v. Sayre.]

usurious interest paid, was $1,782, "or other small sum;" that Adams, at and prior to said sale, was a real-estate agent in Montgomery, and had charge of said property as complainant's agent, and had received and collected the rents thereof as such agent, and well knew of the payment of the usurious interest by complainant to said W. F. and Thomas Joseph, and had paid the same as such agent for complainant;" that after the making of the agreement between complainant and Thomas Joseph, evidenced by the writing signed by Joseph, the property having been advertised for sale under the mortgage, "said Adams, who was fully informed of said agreement, agreed with said Joseph that he (Adams) would buy the property at the foreclosure sale, and hold the same under and pursuant to said agreement in writing, and would pay to Joseph the sum he had agreed to receive from complainant, to-wit, $2,700; which agreement between said Adams and Joseph was communicated to complainant, and was entirely satisfactory to him; and complainant consented to make, and did make, no opposition to said sale under the power in the mortgage, it being clearly understood and agreed, by and between said Joseph, Adams and complainant, that Adams should buy at the sale, at a price not less than the sum which Joseph had agreed to take in cash for the debt, to-wit, $2,700, and that Joseph should execute to Adams a deed pursuant to the sale, and should also transfer and assign to him the said note and mortgage; and that said Adams should hold the property, and also the note and mortgage, subject to complainant's right to redeem upon the terms set forth in said written agreement of Joseph." The bill then alleged that, at the sale under the mortgage, Adams became the purchaser, "and, as complainant supposed, at said agreed price," and received from Joseph a conveyance of the property, and an assignment of the note and mortgage, and thereafter continued in possession of the property, receiving and collecting the rents to his own use; that complainant applied to Adams, a short time before the filing of the bill in this case, for a statement and account of the rents received, with a view and purpose of redeeming the property, "when said Adams denied that he had purchased the property pursuant to any agreement with either complainant or said Joseph, and claimed that he had purchased the same at said sale without any condition or limitation upon his right as such purchaser, and denied that complainant had any right of redemption except under the statute, and claimed that complainant was indebted to him, as the assignee of the note and mortgage, for so much of the nominal indebtedness thereby secured as was not satisfied by his purchase at said sale."

The bill contained, also, the following allegations:

"(11). Complainant does not know what sum was bid by said

[Adams v. Sayre.]

Adams at said sale, nor what sum was paid by him to said Joseph; but Adams claims and pretends that he bid $3,120 at said sale, and paid said sum to said Joseph, in consideration of said sale and conveyance. But complainant avers the fact to be, that whatever sum was paid by said Adams to Joseph was, in whole or [in part], in consideration of the transfer and assignment of said note and mortgage; and that said note and mortgage were transferred and assigned as agreed, or agreed to be transferred and assigned, before any money was paid by Adams to Joseph, or at the time of the payment, and that said Adams, by accepting said transfer and assignment, assumed and became subject to all the equities to which complainant was entitled against said Joseph as the holder of said note and mortgage, including the right and equity to have said payments of usurious interest credited on the debt; or, if this was not done, the right to redeem the property, if purchased at the foreclosure sale by the holder of the mortgage, upon the terms set forth in said agreement with Joseph.

"(12.). Complainant is entitled to redeem said property from said Adams, upon the terms set forth in said agreement with Joseph, and has applied to said Adams for the purpose of redeeming the same; and has offered to pay, and is now, and has been ever since, ready and willing to pay, whatever is justly due to said Adams upon a just and fair accounting, upon the terms set forth in said agreement. Complainant has not been able to make any tender of any specific amount to said Adams, because said Adams has refused to enter into any accounting with him, on the basis of said agreement; and complainant does not know, and can not, without the aid of this honorable court in stating the account of the rents, incomes and profits of said property since said sale, ascertain the amount thereof, so as to determine the amount to be paid by him to redeem said property pursuant to said agreement; but he is ready and willing, and here now offers, to pay said sum whenever the amount is ascertained, and to bring the same into court whenever required so to do by this honorable court."

The 12th paragraph of the bill, above set out, was afterwards struck out by amendment, and the following substituted in lieu of it: "12. That said Thomas Joseph had the right to become the purchaser at said foreclosure sale, under the power of sale contained in said mortgage, and under said written agreement; and it was his duty, in executing said power of sale, either to purchase the property himself, under said agreement with complainant, or to make the same bring the best possible price; yet the said Joseph, at or just before said sale, agreed with said Adams that, if Adams would bid $3,120 for the property, he (Joseph) would not bid at the sale; and pursuant to this agree-

[Adams v. Sayre.]

ment between them, said Joseph did not bid at said sale, and said Adams bid the sum of $3,120, and the auctioneer knocked down the property to him at that bid. Said Adams paid to said Joseph a part of the sum so bid by him pursuant to said agreement, but complainant can not state precisely how much; and thereupon, pursuant to said agreement and bidding, said Joseph executed and delivered to said Adams a conveyance of said property, and transferred and delivered to him said note and mortgage, as above stated. Said agreement between said Joseph and Adams was a breach of trust and duty on the part of said Joseph, participated in by said Adams. Said agreement was wholly unknown to your orator, prior to the filing of this bill of complaint, and he has never sanctioned, ratified, or approved the same; and complainant is advised, and so avers, that said sale and purchase, pursuant to said agreement between said Joseph and Adams, is null and void as against him, and that he is entitled to redeem said property on payment of the amount, if any, really due and unpaid on said promissory note; and he is ready, able and willing, and hereby offers to pay the same, whenever the amount can be ascertained. But complainant is advised, and so avers, that said Adams, as the holder and owner of said mortgage, is liable to account to him for the rents, income and profits of said property, since he commenced receiving the same to his own use, to-wit, May 11th, 1877, and that said rents, income and profits should, so far as necessary, be set off against said mortgage debt; and complainant avers that, upon a fair accounting, said rents, income and profits will more than pay off the balance due on said mortgage debt, and that he is entitled to a decree against said Adams for the residue, if any, which may remain after satisfying in full said mortgage debt."

Adams filed an answer to the original bill, denying all knowledge on his part of the alleged usury in the transactions between the complainant and Joseph; admitting that "he had the control of said property, prior to said sale under the mortgage, as the agent of said Sayre, but only for the purpose of renting and collecting the rents;" denying all knowledge, at the time he purchased the property, of the alleged written agreement between Sayre and Joseph; alleging that he purchased the property in good faith, at the price specified in his deed from Joseph, and paid the money as stated; admitting that the note and mortgage were afterwards transferred to him by Joseph, but alleging that the transfer was made without any other consideration than that stated, and that he took it only as a muniment of title; denying that complainant had any right of redemption, except under the terms of the statute, and alleging that he had never made any tender or offer to redeem, except

under the written agreement with Joseph.  A joint and several demurrer was filed by Adams and Joseph, on the ground that the bill contained no sufficient offer to do equity, and because it was "filed in a double aspect, calling for different and dissimilar relief."    After the allowance of the amendment to the bill, Adams filed another demurrer, assigning the following as grounds of demurrer:  " 1. Said bill is multifarious.  2.  Said bill sets up four distinct and inconsistent causes of relief, to-wit:   1st, it seeks an account of usury, and for surplus proceeds of sale after applying rents to the debt, thus affirming the sale, and giving the property to Adams; 2d, it seeks to redeem the property under the agreement between complainant and Joseph, thus affirming the sale, but giving the property to complainant under the agreement; 3d, it seeks to avoid the sale on account of the agreement by Joseph with Adams not to bid at the sale, thus holding Adams to account as mortgagee in possession; 4th, that Adams bought as agent for Sayre, thus making Sayre liable for the $3,120 bid by Adams for the property.  3.  The amendment makes a new case, inconsistent with the original bill.  4.  The bill contains no sufficient offer to do equity."

Joseph, whose deposition was taken on behalf of the defendants, testified, among other things:  "Adams came to me, a few minutes before the sale, and offered to bid $3,100, if I would not bid; and at the suggestion of my attorney, he bid $20 more, in order to pay the face of the note and the printer's fee. There was no other agreement between us in reference to the sale, and I do not remember to have told him of my agreement with Sayre."   Adams also testified to the same effect; and further:  "I had been agent, managing said property for Sayre, and had been trying for some time to sell it for him, but could not effect a sale.  I paid for the property all it was worth at the time; and I should not have bought it at all, if I had not thought I could thereby collect from Sayre the amount of his indebtedness to me, about $150."

The chancellor overruled the demurrers to the bill, on the authority of *Pitts v. Powledge*, 56 Ala. 147; and on final hearing, on pleadings and proof, rendered a decree for the complainant, and ordered an account to be stated by the register; directing him to charge the complainant with legal interest on his note from its maturity, with all taxes paid by Adams, with the cost of all necessary repairs put on the property, and with the value of all permanent improvements erected, and to credit him with all payments made to Joseph, " according to the legal rule for applying partial payments, and with the rents received by Adams since he went into possession."

From this decree Adams appeals, and here assigns as error

[Adams v. Sayre.]

the allowance of the amendment to the bill, the overruling of his demurrers, and the final decree granting relief.

GUNTER & BLAKEY, for appellant.—The original bill, in each of its aspects or phases, affirms the validity of the sale under the mortgage, and seeks relief on the ground of usury, charging that Adams had notice thereof, and on the terms of the written agreement signed by Joseph, charging Adams with notice of it also; while the amendment, striking out the 12th paragraph of the original bill, seeks to set aside the sale on the ground of fraud. These different reliefs are inconsistent and antagonistic, and rendered the whole bill, as amended, subject to the grounds of demurrer specially assigned. If a decree *pro confesso* had been taken under the bill as amended, what relief would have been granted to the complainant? Would the sale have been affirmed, or set aside on the ground of fraud? The amendment made a new and different case, and ought not to have been allowed; and having been allowed, the whole bill was demurrable.—*Charles v. Dubose*, 29 Ala. 367; *Pitts v. Powledge*, 56 Ala. 150; *Micou v. Ashurst*, 55 Ala. 607.

2. The only tender, or offer to redeem, either alleged or proved, was under the written agreement with Joseph, claiming that Adams was bound by it. But Adams denied all knowledge of that agreement, and there is no proof of any notice to him; and the amended bill, seeking to set aside the sale on the ground of fraud, repudiates, at least by implication, any claim to relief founded on that agreement.

3. No fraud can be imputed to Adams, on the facts proved in relation to his purchase at the sale. He did not make the sale as agent, and his agency did not disqualify him from becoming the purchaser. He was under no obligation to buy and hold for Sayre, and might lawfully protect himself by buying in the property, allowing Sayre to redeem under the terms prescribed by the statute. The agreement between him and Joseph, as disclosed by the testimony, had in it no element of fraud, and was not contrary to any principle of public policy. If Joseph had any right to bid at the sale, which is denied, he was not bound to make the property bring more than the amount of his debt; and this was effected by the agreement, while it prevented any "by-bidding" on his part at the expense of Adams, but allowed full and fair competition by all other persons.—*Haynes v. Crutchfield*, 7 Ala. 189; *Deurman v. Dearman*, 4 Ala. 521; *Kearney v. Taylor*, 15 Howard, 607, and cases cited.

TROY & TOMPKINS, *contra.*—1. The bill is, in substance, that Adams bought subject to the agreement between complainant

and Joseph, and therefore complainant is entitled to redeem; or, if this is not true, that complainant is entitled to set aside the sale and redeem, on account of the agreement between Adams and Joseph. Under either of these aspects, the relief granted the complainant would be substantially the same—that is, he would be let in to redeem, on payment of the amount due on the note, with legal interest, after crediting him with the rents received by Adams; and it can make no difference whether he is entitled to relief by contract, or by operation of law.—*Pitts v. Powledge*, 56 Ala. 150; *Davies v. Otty*, 2 DeGex, J. & S. 238; Story's Equity Pleadings, § 42.

2. The agreement between Adams and Joseph, under which the former became the purchaser at the mortgage sale, was a fraud on the complainant's rights, which entitles him to set aside the sale.—*Doolin v. Ward*, 6 Johns. 194; *Jones v. Caswell*, 3 Johns. Cas. 29; *Wilbar v. How*, 8 Johns. 444; *Thompson v. Davies*, 13 Johns. 112; *Loyd v. Malone*, 23 Illinois, 48; *Atcheson v. Malone*, 43 N. Y. 149; *Wheeler v. Wheeler*, 5 Lans. N. Y. 357.

SOMERVILLE, J.—It is settled in our practice, that a bill in equity may be framed with a double aspect, embracing alternative averments, provided that each aspect entitles the complainant to substantially the same relief, and the same defenses are applicable to each.—*Gordon's Adm'r v. Ross*, 63 Ala. 363; *Micou v. Ashurst*, 55 Ala. 607. If the causes of action presented are so distinct as to require inconsistent and repugnant reliefs, and different defenses, the bill is demurrable on the ground of multifariousness.

And under the provisions of section 3788 of the Code of 1876, any defect in the frame of a bill may be amended, so as to meet any state of evidence authorizing relief; unless it makes an entirely new case, or is tantamount to a radical departure from the case made by the original bill, or operates as an entire change of parties.—*Pitts v. Powledge*, 56 Ala. 147.

Complainant's bill was not obnoxious to these objections, at any rate after the amendment authorized by the chancellor. In each aspect, it seeks to avoid the sale made under the execution of the power in the mortgage to Joseph, and to redeem the property—in the one alternative, under the terms of an alleged agreement; and in the other, according to terms imposed by law. The relief thus afforded, in the two alternatives presented, are similar, if not identical in kind, and are certainly not repugnant in their nature.

The offer of complainant to do equity was, under the circumstances, sufficient. He averred his ignorance of the amount bid by Adams at the sale, his unsuccessful application to the

[Martin v. Ellerbe's Administrator.]

latter for an accounting with him, and an offer to redeem by paying what was due him.—*Eslava v. Crampton*, 61 Ala. 507; *Rogers v. Torbut*, 58 Ala. 523; *Gunn v. Brantley*, 21 Ala. 633. He also accompanied the averment of usury with the requisite offer to pay the principal of the debt, with legal interest.—*Uhlfelder v. Carter's Adm'r*, 64 Ala. 527.

The relation of Adams towards the complainant, Sayre, was clearly a fiduciary one. He was Sayre's agent, having the control and possession of the mortgaged property, and performing the duty of managing and renting the same, collecting rents, and paying taxes and insurance. He was also the authorized agent of Sayre, the mortgagor, to *effect a sale of the property.* He resided in the city of Montgomery, where the property was situated, while his principal resided some distance from the city, in the country. Such an agency carries with it the duties exacted by law from fiduciary characters.—*Zetelle v. Myers*, 19 Gratt. 62; Ewell's Evans on Agency, 249, *note* 2. The agent is not permitted to traffic with the subject-matter of his agency, without the consent of his principal, so as to reap a profit for himself. When he undertakes to manage in a particular matter for another, he impliedly undertakes not to manage for himself. It is contrary to well-established principles of equity, to permit an agent to purchase an interest in property when he has any duty devolved on him inconsistent with the character of a purchaser.—*Grumley v. Webb*, 44 Mo. 44; *Saltmarsh v. Beene*, 4 Port. 283. The appellant was the agent of the mortgagor to sell the property, and this relationship imposed on him the manifest duty of obtaining for it the highest available price. The procurement of Joseph not to bid against him at the mortgage sale, was an obvious infraction of this duty.—Ewell's Evans on Agency, pp. 272, 275.

We cannot see that the chancellor has erred in decreeing relief to the complainant, or in announcing the principles on which the account between the parties should be stated. Let the decree be affirmed.