Clark C. NYE, Plaintiff,

v.

Edwin M. LOVELACE, Defendant.

Civ. No. 1139.

United States District Court,
S. D. Alabama, S. D.

Sept. 27, 1954.

Motion to Amend Findings and Conclusions Denied Dec. 30, 1954.

C. Harold Thweatt, Embry, Crowe, Tolbert, Boxley, & Johnson, Oklahoma City, Okl., Ralph G. Holberg, Jr., Holberg, Tully & Aldridge, Mobile, Ala., for plaintiff.

William G. Caffey (of Caffey, Gallalee & Caffey), Mobile, Ala., for defendant.

THOMAS, District Judge.

This action arises out of a disagreement as to the purchase and ownership of certain mineral interests in Escambia County, in what is known as the Pollard Oil Field. The controversy involves three questions:

1. Were certain mineral interests, upon which the defendant made a profit, purchased for the plaintiff's account, or purchased by the defendant and sold to the plaintiff?

2. Did the defendant have the right to purchase for his own account the mineral interest in what is referred to as the Johnson tract?

3. Did the defendant have the right to purchase for his own account the mineral interest in what is referred to as the Gray tract?

The answers to these three questions depend upon the relationship that existed between the plaintiff and the defendant during the acquisition of the mineral interests here in controversy. That there was an agency relationship between the plaintiff and one Gorton is not controverted; the point of contention relates only to the nature of the agreement between Gorton and the defendant while Gorton was acting as agent for the plaintiff. There was no written agreement between the parties, and the entire course of dealings was established by parol testimony. The plaintiff contends that an agency relationship existed between him and the defendant; and, upon this contention, seeks to have a trust impressed upon the mineral interests which were purchased by the defendant and not conveyed to the plaintiff. Agency is in all respects denied by the defendant, who contends that the relationship between him and the plaintiff was solely that of vendor and vendee.

## Findings of Fact.

### I.

The plaintiff became interested in the acquisition of mineral rights in what is now known as the Pollard Oil Field. In the early part of 1951, the plaintiff, through his agent Gorton, got in touch with the defendant and requested his assistance in securing the desired mineral interests. This contact was quite productive, though the ownership of the fruit is now in controversy. During the original discussion between Gorton and the defendant, Gorton had exhibited a map prepared by the plaintiff, showing the area in which the plaintiff was interested. The boundaries indicated thereon were placed upon a map in possession of the defendant. These boundaries marked the area in which the plaintiff desired to secure mineral interests. At the initial meeting, or later the same day, Gorton informed the defendant of the proposed location of a well to be drilled in the area, and this location was marked upon the map in possession of the defendant.

Upon the defendant's agreement to assist in acquiring the desired mineral interests, Gorton made funds available to the defendant at a local bank. This was accomplished through a deposit made by the plaintiff in Gorton's name, and a letter of authority from Gorton to the bank authorizing the defendant to draw on the deposit.

The foregoing facts are substantially in accord with the assertions of both parties; but serious conflicts in testi-

mony cloud the import of the agreement. The cashier who handled the transaction making funds available to the defendant, understood that the amount of the draft drawn by the defendant on Gorton's account represented the amount paid to the grantor of the mineral deed; but it appears that he (the cashier) had no direct knowledge of this arrangement or of the agreement between the defendant and Gorton.

Gorton's version of the agreement is: that at the original meeting the defendant agreed to assist in securing the desired mineral interests and at that time the question of compensation arose; that the defendant informed Gorton that he would prefer a part of the mineral interests purchased to any other type of compensation; that, acting upon this preference of the defendant, Gorton at that time agreed to pay the expenses incurred by the defendant, and further agreed, if the desired mineral interests were acquired, they (he or the plaintiff) would convey to the defendant a portion of the mineral interests so acquired. It was further understood, Gorton testified, that the purchases would be accomplished by the defendant's locating an owner willing to sell, securing a price, and submitting it to Gorton, who would then either accept or reject the proffered sale. Gorton testified he understood that the price submitted to him would be the price at which the grantor would sell.

The material aspects of Gorton's version of the agreement are denied by the defendant, who contends that the question of compensation did not arise. According to the defendant, he did agree to assist Gorton in acquiring the desired mineral interests. But defendant earnestly maintains that such assistance was to be accomplished solely upon a vendor-vendee basis between him and Gorton. The defendant testified he informed Gorton that he would locate an owner willing to sell, secure a price and then submit a price to Gorton who could either accept or decline the proffered sale. Defendant further testified he understood his sole compensation was to be the difference between the price at which the grantor of the mineral interest would sell and the price at which he (the defendant) could sell to Gorton.

Regardless of what the agreement between the parties was, the actual purchase of the mineral interests was accomplished thus: defendant located an owner willing to sell, secured a price from him, and then submitted to Gorton a higher price. If Gorton rejected the price quoted him, the sale fell through; if he accepted the price, the defendant then issued his personal check to the grantor in the amount for which the grantor had agreed to sell. The defendant then took the mineral deed—in each instance the recited consideration was "ten dollars and other good and valuable consideration"—to the bank and drew a draft payable to himself on Gorton's account, for the higher price which the defendant had quoted Gorton. There was no uniform system by which the defendant calculated the difference between the amount which was paid to the grantor and the amount for which he (the defendant) drew the draft on Gorton's account. The only apparent yardstick was what the defendant thought the plaintiff would pay for the particular mineral interest involved.

Dollar-wise, the transactions between the parties, excluding the two separate tracts in controversy, may be summed up as follows: The price paid to the several grantors of the mineral deeds was $3,695; the amount of the drafts drawn on Gorton's account, payable to the defendant in respect to the mineral deeds, was $6,292; the difference between these figures is the profit of $2,597, which was made by the defendant on the transactions. It is the plaintiff's contention that this amount was a secret profit made by the defendant in the capacity of an agent. The defendant, denying the agency, contends that the profit was his just compensation made from the sale of the mineral interests to Gorton.

Upon the closing out of the dealings between the defendant and Gorton, at which time the bank account of Gorton

was closed, a draft was issued to the defendant in the amount of $110, which Gorton understood was to cover the expenses incurred by the defendant incident to the purchase of the mineral interests. Gorton also conveyed to the defendant a total of 41.66 mineral acres which, according to the court's calculations, represented approximately 7.8% of the mineral acreage purchased by the defendant, or mineral acreage the purchase price of which represented approximately 7.4% of the amount paid the several grantors. The defendant appeared to be satisfied with this settlement; and Gorton and the plaintiff at that time understood that the amount of the expenses paid and the mineral interest conveyed to the defendant was the total compensation received by the defendant. The defendant understood that the supposed settlement was a bonus for his activities.

During the next year, when the plaintiff was in Brewton, his observation of the records at the court house led him to suspect that conditions might be different from what he had understood. Further investigation by him and the pre-trial deposition of the defendant brought forth the facts as they actually existed.

Based upon the evidence, much of which was conflicting, the court finds that the defendant entered into an agreement with Gorton to purchase for the plaintiff the mineral interests available in the designated area at prices to be approved by Gorton; and that the compensation to be paid to the defendant was his actual expenditures plus the conveyance to the defendant of a part of the mineral interests, to be agreed upon. The mineral interests purchased within the designated buying area were purchased by the defendant in the capacity of an agent for Gorton, and therefore for the plaintiff. Under the agreement, the defendant was not entitled to secure unto himself a profit by drawing drafts upon Gorton's account in excess of the amount paid to the several grantors.

The profit of $2,597, made by the defendant by drawing drafts payable to himself in excess of the amount paid to the several grantors, was a secret profit made out of his agency agreement. The plaintiff is entitled to recover of the defendant that amount together with interest from September 6, 1951.

## II.

During the period in which the agreement in question was operative, the defendant purchased an undivided mineral interest in two parcels of property, referred to as the Johnson tract. This property was located within the perimeter designating the area in which the plaintiff desired to secure mineral interests. At the time of the purchase of the Johnson tract, title was taken in the defendant's name, and at no time thereafter was the tract offered to the plaintiff or Gorton. Some months after the purchase, the plaintiff learned that the defendant had acquired this interest. The cost to the defendant was $81.

As the Johnson tract was within the confines of the designated buying area, it was the subject matter of the agency between the plaintiff and the defendant; therefore, it was incumbent upon the defendant to offer the property to the plaintiff or to advise him of his (the defendant's) interest therein. This admittedly was not done. As the purchase was made by the defendant while acting as the agent of the plaintiff in the purchase of the mineral interests within the designated area, the purchase was for the benefit of the plaintiff. The plaintiff is entitled to have the defendant convey the interest held in the Johnson tract to him upon the payment of the $81 expended by the defendant for the said interest.

## III.

While the defendant was engaged in purchasing mineral interests for the plaintiff, the defendant acquired an undivided mineral interest in a parcel of property referred to as the Gray tract. This purchase was made at the same

time that the defendant purchased an undivided mineral interest in the Crosby tract. Both the Gray tract and the Crosby tract were purchased from one Hart.

The plaintiff contends that the Gray tract was the subject matter of the agency and that the purchase was made with his funds. This is denied by the defendant.

Some weeks prior to this purchase, the defendant had endeavored to purchase an undivided interest in the minerals in the Crosby tract. A price was secured from the three owners, each owning an undivided one-third interest, and the tract was submitted to Gorton at an increased price. This was a rather large purchase, and Gorton, being unable to contact the plaintiff, declined to make the purchase. Later, when the plaintiff again expressed interest in the Crosby tract, the defendant endeavored to purchase an undivided interest therein from Hart, the other owners having indicated that they did not desire to sell. The discussion at that time between the defendant and Hart related only to the sale of the Crosby tract. Later, when the defendant and Hart chanced to meet in Brewton, Hart told the defendant that he would sell some minerals under the Crosby tract. The defendant was to have Hart's attorney prepare the mineral deed. Thereafter, the defendant learned that Hart owned the Gray tract and, being desirous to acquire it, the defendant had a mineral deed prepared conveying a one-half undivided interest in the Gray tract, and this deed was taken with the defendant when he purchased the Crosby tract. Both the deed to the Crosby tract and the deed to the Gray tract were executed by Mr. Hart.

Upon the original purchase, both deeds showed the defendant as the grantee. The Crosby tract was transferred to Gorton and the deed changed to show Gorton as the grantee. The mineral interest in the Gray tract was not offered to Gorton or the plaintiff at any time. The defendant asserts that it was purchased for his own account.

It was frequently necessary to purchase mineral rights outside the designated buying area in order to purchase minerals that lay within the area. The Crosby tract was no exception; a considerable part lay outside the area.

From the circumstances surrounding the purchase of the two tracts, it appears clear that they were separately negotiated. There was no discussion relative to the Gray tract until the defendant's visit to conclude the purchase of the Crosby tract. What was said at that time relative to the Gray tract is now in dispute; but it is uncontroverted that the Gray tract had not previously been discussed and that the price per acre of the Crosby tract had been agreed upon. The court is mindful of the testimony of Hart to the effect that the sale of both tracts was one transaction; but on a detailed analysis of his testimony, this seems to be merely Hart's conclusion, without substantial basis in fact.

█ The Gray tract was located adjacent to, but outside of, the designated area in which the plaintiff desired to buy. At the trial, considerable stress was placed upon the fact that the Gray tract was an "off-set forty" to the proposed well. As the information about the proposed well had been received by the defendant through Gorton at the time that the defendant had agreed to assist in the purchase of the mineral interests within the designated area for the plaintiff, plaintiff reasons that the defendant could not use such information for his own advantage, but rather was under a duty to inform the plaintiff or Gorton of the availability of the mineral rights under the Gray tract. With this contention the court does not agree. The plaintiff had designated the area in which he was interested, and the Gray tract was not included therein. When the map was prepared, the plaintiff knew the location of the proposed well, but did not include the Gray tract. All the facts then being within the plaintiff's knowledge, he may not now bring the Gray tract within the scope of the agency by the as-

sertion that any one would have known the value of the Gray minerals due to the location of the tract with regard to the proposed well.

 The facts here are to be distinguished from cases wherein it develops that something apparently not within the subject matter of the agency is discovered by the agent to be essential for implementing the intentions of the principal. In the instant case the minerals under the Gray tract had no bearing or effect upon the minerals under the buying area. The purchase of minerals outside the area in no wise affected the plaintiff's securing the desired minerals or any use thereof or returns therefrom. It must be borne in mind that this was not an area being developed by the plaintiff. The plaintiff's interests lay only in securing the minerals (royalty interest) in the area which appeared attractive to him. This area was designated by the plaintiff, with knowledge of the location of the proposed well; and he did not include the Gray tract therein. In view of these facts, it appears evident that the purchase by the defendant of the undivided interest in the minerals in the Gray tract did not infringe upon the agency existing between the plaintiff and the defendant.

### Conclusions of Law.

1. Where an agent has entered upon the performance of the acts concerning the agency, lack of mutuality as to the contract or agreement regarding the agent's compensation will not relieve the agent of the responsibility to his principal for an accounting as to that which was performed under the agency. Camp v. Roanoke Guano Co., 235 Ala. 61, 177 So. 343; 3 C.J.S., Agency § 151.

2. A party who undertakes to act as an agent for another, shall not, in the same matter, act for himself without a complete disclosure to his principal; and if an agent violates his contract of agency, all unauthorized profits or advantages gained by him out of the subject matter of the agency belong to the principal. Adams v. Sayre, 70 Ala. 318; Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538; 3 C.J.S., Agency § 165.

3. In activities that are outside the scope or subject matter of the agency, the agent is not prohibited from acting for his own account, as in such matters the relationship of principal and agent does not exist.